1  Gregory F. Miller, (pro hac vice)
   GMiller@perkinscoie.com
2  Steven Williamson, Bar No. 343842
   SWilliamson@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park East, Suite 1700
4  Los Angeles, California 90067-1721
   Telephone: +1.310.788.9900
5  Facsimile:  +1.310.788.3399

6  *Attorneys for Defendant Amazon.com, Inc.*

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 | NICHOLAS MCCARTHY and | Case No. 3:22-cv-05718
   | MARTINIQUE MAYNOR, individually and |
12 | NICHOLAS MCCARTHY as successor-in- | **DEFENDANT AMAZON.COM, INC.'S**
   | interest to ETHAN MCCARTHY a deceased | **NOTICE OF MOTION AND MOTION TO**
13 | individual; LAURA JÓNSSON and STEINN | **DISMISS OR TRANSFER**
   | JÓNSSON, individually, and LAURA |
14 | JÓNSSON as successor-in-interest to | Date:      02/09/2023
   | KRISTINE JÓNSSON, a deceased individual, | Time:      10:00 AM
15 |                                        | Judge:    Hon. James Donato
   |              Plaintiffs, |
16 |                                        | [Removed from the Superior Court of the State
   |        v. | of California for the County of Alameda,
17 |                                        | Case No. 22cv018942]
   | AMAZON.COM, INC., a Delaware |
18 | corporation, and LOUDWOLF, INC., a | Amended Complaint Filed: December 12,
   | California corporation, | 2022
19 |                                        |
   |              Defendants. |
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ................................................................................ vii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

    A.    Kristine Jónsson Purchases Sodium Nitrite from Loudwolf and
             Intentionally Misuses it to Commit Suicide............................................................ 2

    B.    Ethan McCarthy Purchases Sodium Nitrite from Loudwolf and
             Intentionally Misuses it to Commit Suicide............................................................ 3

    C.    Plaintiffs Claim that Amazon Is Liable for Loudwolf's Lawful Sales of
             Sodium Nitrite that Kristine and Ethan Intentionally Misused to Commit
             Suicide..................................................................................................................... 3

ARGUMENT ............................................................................................................................. 3

    A.    This Court Lacks Personal Jurisdiction Over Amazon in This Case. .................... 3

    B.    Plaintiffs Allege No Viable Claims Against Amazon............................................. 8

             1.    Plaintiffs Allege No Viable Claim Based on Ethan's Suicide. ................. 9

             2.    The Complaint Fails to State a Viable Claim for Kristine's Death. ........ 17

CONCLUSION ........................................................................................................................ 20

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Altman v. HO Sports Co.*,

5
    821 F. Supp. 2d 1178 (E.D. Cal. 2011) ................................................................................. 10

6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) .............................................................................................. 4

7

*Blake v. Moore*,

8
    208 Cal. Rptr. 703 (Ct. App. 1984) ...................................................................................... 12

9

*BNSF Ry. Co. v. Tyrrell*,

10
    137 S. Ct. 1549 (2017) .......................................................................................................... 4

11

*Boeken v. Philip Morris, Inc.*,
    26 Cal. Rptr. 3d 638 (Ct. App. 2005) ................................................................................... 11

12

*Bojorquez v. House of Toys, Inc.*,

13
    133 Cal. Rptr. 483 (Ct. App. 1976) ...................................................................................... 12

14

*Bristol-Myers Squibb Co. v. Superior Ct.*,

15
    137 S. Ct. 1773 (2017) ............................................................................................. 1, 4, 5, 6, 8

16

*Casillas v. Auto-Ordnance Corp.*,
    1996 WL 276830 (N.D. Cal. May 17, 1996) ........................................................................ 12

17

*Chen v. L.A. Truck Ctrs., LLC*,

18
    255 Cal. Rptr. 3d 559 (Ct. App. 2019) ................................................................................. 14

19

*Clearwater Rei, LLC v. Focus Consulting Advisors, LLC*,

20
    2011 WL 3022071 (D. Idaho July 22, 2011) ........................................................................ 7

21

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................................................. 4

22

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.*,

23
    907 F.2d 911 (9th Cir. 1990) ................................................................................................ 6

24

*Fischer v. Morales*,
    526 N.E.2d 1098 (Ohio Ct. App. 1987) ............................................................................... 8

25

*Flores v. Enter. Rent-A-Car Co.*,

26
    116 Cal. Rptr. 3d 71 (Ct. App. 2010) ................................................................................... 13

27

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,

28
    141 S. Ct. 1017 (2021) .......................................................................................................... 5

3:22-cv-05718
AMAZON.COM, INC.'S MOTION TO DISMISS OR TRANSFER

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Gillingham v. Stephenson*,
551 S.E.2d 663 (W. Va. 2001) ................................................................................................ 16

*Green v. Healthcare Servs., Inc.*,
283 Cal. Rptr. 3d 482 (Ct. App. 2021) ..................................................................................... 8

*Greene v. A.P. Prods., Ltd.*,
717 N.W.2d 855 (Mich. 2006) ................................................................................................ 10

*Holmes v. J. C. Penney Co.*,
183 Cal. Rptr. 777 (Ct. App. 1982) ............................................................................. 12, 13, 14

*Huggins v. Tri-Cnty. Bonding Co.*,
337 S.E.2d 12 (W. Va. 1985) .................................................................................................. 16

*Huitt v. S. Cal. Gas Co.*,
116 Cal. Rptr. 3d 453 (Ct. App. 2010) ................................................................................... 10

*Hunt v. Erie Ins. Grp.*,
728 F.2d 1244 (9th Cir. 1984) .................................................................................................. 6

*Iconlab, Inc. v. Bausch Health Cos.*,
828 F. App'x 363 (9th Cir. 2020) ............................................................................................. 6

*Jacoves v. United Merch. Corp.*,
11 Cal. Rptr. 2d 468 (Ct. App. 1992) ................................................................................. 12, 13

*Johnson v. Am. Standard, Inc.*,
179 P.3d 905 (Cal. 2008) .................................................................................................... 9, 10

*Johnson v. Law*,
19 F. Supp. 3d 1004 (S.D. Cal. 2014) ...................................................................................... 8

*Joseph Saveri L. Firm, Inc. v. Criden*,
696 F. App'x 189 (9th Cir. 2017) ............................................................................................. 7

*Ko v. Maxim Healthcare Servs.*,
272 Cal. Rptr. 3d 906 (Ct. App. 2020) ................................................................................... 17

*Landis v. Hearthmark, LLC*,
750 S.E.2d 280 (W. Va. 2013) ................................................................................................ 16

*LegalForce RAPC Worldwide P.C. v. Swyers*,
2018 WL 3439371 (N.D. Cal. July 17, 2018) .......................................................................... 6

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Lim v. Lim,*
2022 WL 3925284 (N.D. Cal. Aug. 30, 2022).......................................................................... 8

*Lindstrom v. Hertz Corp.,*
96 Cal. Rptr. 2d 874 (2000) ..................................................................................................... 13

*M.M. v. M.F.,*
2020 WL 6342653 (Ohio Oct. 29, 2020) .................................................................................. 20

*Maneely v. Gen. Motors Corp.,*
108 F.3d 1176 (9th Cir. 1997)............................................................................................... 9, 10

*McCann v. Foster Wheeler LLC,*
225 P.3d 516 (Cal. 2010) .......................................................................................................... 14

*McCollum v. CBS, Inc.,*
249 Cal. Rptr. 187 (Ct. App. 1988).......................................................................................... 14

*McLaughlin v. Sullivan,*
461 A.2d 123 (N.H. 1983) ......................................................................................................... 15

*Miles v. Raymond Corp.,*
612 F. Supp. 2d 913 (N.D. Ohio 2009).............................................................................. 17, 18

*Miles v. S.C. Johnson & Son, Inc.,*
2002 WL 1303131 (N.D. Ill. June 12, 2002) ........................................................................... 10

*Moats v. Preston Cnty. Comm'n,*
521 S.E.2d 180 (W. Va. 1999)....................................................................................... 8, 14, 15

*Morrill v. Scott Fin. Corp.,*
873 F.3d 1136 (9th Cir. 2017)...................................................................................................... 5

*Morris v. Corder,*
866 S.E.2d 66 (W. Va. 2021) ..................................................................................................... 15

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.,*
2009 WL 2849130 (D. Haw. Aug. 26, 2009)............................................................................. 7

*Panavision Int'l, L.P. v. Toeppen,*
141 F.3d 1316 (9th Cir. 1998).................................................................................................... 5

*Parker v. ACE Hardware Corp.,*
104 N.E.3d 298 (Ohio Ct. App. 2018) ..................................................................................... 17

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Perzow v. Hogeg*,
4      826 F. App'x 615 (9th Cir. 2020) ........................................................................... 7

5  *Picot v. Weston*,
      780 F.3d 1206 (9th Cir. 2015)............................................................................. 4, 7
6
*Ravelo Monegro v. Rosa*,
7      211 F.3d 509 (9th Cir. 2000).................................................................................. 8

8  *Roney v. Gencorp*,
      654 F. Supp. 2d 501 (S.D.W. Va. 2009) ............................................................... 16
9
*State v. Shuck*,
10      166 N.E.3d 122 (Ohio Ct. App. 2020) ................................................................. 20

11 *Steel v. City of San Diego*,
      726 F. Supp. 2d 1172 (S.D. Cal. 2010) ................................................................ 17
12
*Stiner v. Amazon.com, Inc.*,
13      164 N.E.3d 394 (Ohio 2020)........................................................................... 17, 19

14
*Stratford v. SmithKline Beecham Corp.*,
15      2008 WL 2491965 (S.D. Ohio June 17, 2008) ..................................................... 18

16 *Stump v. Ashland, Inc.*,
      499 S.E.2d 41 (W. Va. 1997) ................................................................................ 17
17
*Swartz v. KPMG LLP*,
18      476 F.3d 756 (9th Cir. 2007).................................................................................. 6

19
*Taylor v. Yale & Towne Mfg. Co.*,
20      520 N.E.2d 1375 (Ohio Ct. App. 1987) ................................................................ 19

21 *Volovetz v. Tremco Barrier Sols., Inc.*,
      74 N.E.3d 743 (Ohio Ct. App. 2016) ............................................................... 17, 18
22
*Webb v. Special Elec. Co.*,
23      370 P.3d 1022 (Cal. 2016) ..................................................................................... 9

24
*Webstad v. Stortini*,
25      924 P.2d 940 (Wash. Ct. App. 1996) .................................................................... 16

26 *WEL Cos. v. Haldex Brake Prods. Corp.*,
      467 F. Supp. 3d 545 (S.D. Ohio 2020)................................................................. 19

27

28

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Westfield Cos. v. O.K.L. Can Line*,
　804 N.E.2d 45 (Ohio Ct. App. 2003) ...................................................................... 18

*World-Wide Volkswagen Corp. v. Woodson*,
　444 U.S. 286 (1980) ................................................................................................. 5

*Yamashita v. LG Chem, Ltd.*,
　48 F.4th 993 (9th Cir. 2022) .................................................................................... 4

*Ziegler v. Indian River Cnty.*,
　64 F.3d 470 (9th Cir. 1995) ..................................................................................... 6

STATUTES

28 U.S.C. § 1406 ............................................................................................................ 4

28 U.S.C. § 1406(a) ....................................................................................................... 8

Cal. Penal Code § 401(a) ............................................................................................. 14

Ohio. Rev. Code § 2307.71(A)(13)(a)–(b) .................................................................. 18

Ohio Rev. Code § 2307.71(B) ...................................................................................... 17

Ohio Rev. Code § 2307.74–77 ..................................................................................... 19

Ohio Rev. Code § 3795.01(A) ..................................................................................... 20

Ohio Rev. Code § 3795.04(A)(1) ................................................................................. 20

RULES

Fed. R. Civ. P. 12(b)(2) ............................................................................................ 4, 8

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 2

OTHER AUTHORITIES

Restatement (Second) of Torts § 286, *cmt. d* ............................................................. 20

Restatement (Second) of Torts § 390 (1965) ................................................... 11, 12, 20

Restatement (Second) of Torts § 402A cmt. j ............................................................. 10

William L. Prosser, *Law of Torts* § 49 (2d ed. 1955) ................................................... 8

3:22-cv-05718
AMAZON.COM, INC.'S MOTION TO DISMISS OR TRANSFER

1

**<u>NOTICE OF MOTION AND MOTION</u>**

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE that on February 9, 2023 at 10:00 a.m. or as soon thereafter as

4   this Motion to Dismiss or Transfer ("Motion") may be heard in the above-entitled court, located at

5   450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Amazon.com, Inc., by and through

6   its counsel of record, will and hereby does, move the Court to dismiss this case pursuant to Federal

7   Rule of Civil Procedure 12 or, in the alternative, transfer this case.

8      This Motion is made on several grounds.  First, there is no personal jurisdiction over

9   Amazon. Second, Plaintiffs' Amended Complaint alleges no viable claims against Amazon.  Count

10   I brings a products-liability claim based on allegedly inadequate warnings, but no duty to warn

11   exists under the facts as alleged.  Count II brings a negligence claim based on negligent entrustment

12   and a statutory-based duty theory.  But neither of the decedents were the type of legal

13   "incompetents" who can bring a negligent entrustment action, and the alleged conduct by Amazon

14   did not violate any statute regarding suicide.  Count III brings a negligent infliction of emotional

15   distress claim.  This claim is derivative of the underlying tort claims and similarly fails, and none

16   of the parents may recover under a negligent-infliction-of-emotional-distress theory.

17      This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities

18   herein, the Declaration of Andy Sachs along with all supporting exhibits, the pleadings and papers

19   on file in this action, any argument and evidence to be presented at the hearing on this Motion, and

20   any other matters that may properly come before the Court.

21   Dated:  January 3, 2023                **PERKINS COIE LLP**

22

23                                 By: */s/ Steven G. Williamson*

24                                    Steven G. Williamson, Bar No. 343842
                                       SWilliamson@perkinscoie.com

25                                    Gregory F. Miller, Pro Hac Vice
                                       GMiller@perkinscoie.com

26                                    Attorneys for Defendant Amazon.com, Inc.

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Kristine Jónsson and Ethan McCarthy both purchased sodium nitrite from co-defendant Loudwolf on Amazon's website and used it commit suicide in separate incidents in West Virginia and Ohio. Their parents now seek to hold both Loudwolf and Amazon liable for their deaths. But the tort system does not impose liability for the lawful sale of a product to legally competent persons who then intentionally misuse that product to commit suicide. While Kristine's and Ethan's deaths are heartbreaking, their parents' attempt to hold Amazon liable is contrary to well-established law in California, West Virginia, and Ohio.

This Court should dismiss the claims against Amazon for two principal reasons. First, there is no personal jurisdiction over Amazon. General jurisdiction is lacking because Amazon is incorporated in Delaware and has its principal place of business in Washington. And there is no specific jurisdiction because, as the Supreme Court held in a product-liability case, trial courts have no "authority to exercise jurisdiction over an out-of-state defendant" in order "to entertain claims involving no in-state injury and no injury to residents of the forum State." *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1782–83 (2017).

Second, the Amended Complaint alleges no viable claim against Amazon. Count I brings a products-liability claim based on allegedly inadequate warnings. But there was no duty to warn here, given that Kristine and Ethan knew that ingesting sodium nitrite is fatal—indeed, they sought the product out for this very property—and the dangers of ingesting an industrial-grade chemical are obvious. What's more, given that Kristine and Ethan intended to commit suicide, the supposed inadequacies in the warnings and instructions were not a substantial factor in their deaths. Count II brings a negligence claim based on negligent entrustment and a statutory-based duty theory. The claim fails for a host of reasons, including the fact that neither Ethan nor Kristine were the kind of legal "incompetents" who can bring a negligent entrustment action and the alleged conduct by Amazon did not violate any statute regarding suicide. Count III brings a negligent infliction of emotional distress claim. This claim is derivative of the underlying tort claims and falls along with them. Also, none of the parents here contemporaneously viewed the injury-causing events and thus

cannot recover under a negligent-infliction-of-emotional-distress theory.

## FACTUAL BACKGROUND

Kristine Jónsson and Ethan McCarthy bought a legal product from Loudwolf and misused it to commit suicide. The following factual allegations are relevant to the present motion.[1]

### A.     Kristine Jónsson Purchases Sodium Nitrite from Loudwolf and Intentionally Misuses it to Commit Suicide.

Kristine Jónsson took her life on September 30, 2020, at the age of sixteen. *See* Dkt. #15 (hereinafter "Compl.") ¶¶ 157, 179–86. Earlier that month she had become "resolute about dying" after struggling with "the quarantine restrictions" during the COVID-19 pandemic, which left her "feeling listless and meaningless." *Id.* ¶ 160, 162. Kristine "learned about Sodium Nitrite" from a "pro-suicide website" called "Sanctioned-Suicide.com." Compl. ¶¶ 116, 170. Plaintiffs do not, and cannot, allege that Sanctioned Suicide is affiliated with Amazon in any way. The website has "a Suicide.Wiki link" that provides instructions on various methods of suicide, including hanging, jumping, and ingesting sodium nitrite. *Id.* ¶ 112 n.5. It also has "threads of instructions specifying dosages" of sodium nitrite, as well as "methods for dissolving" it "in water prior to consumption." *Id.* ¶ 143. Although sodium nitrite is sold by numerous vendors on various websites, "many users" on Sanctioned Suicide "suggest Amazon and Loudwolf." *Id.* ¶ 142. Kristine researched these threads, taking notes on "the four steps to death by Sodium Nitrite" and calculating the dosage she would need. *Id.* ¶¶ 171–72.

Kristine "went on Amazon.com" and bought sodium nitrite from Loudwolf on September 24, 2020. *Id.* ¶ 173. She used a newly created Amazon account. *Id.* Three days after receiving the sodium nitrite in Ohio, "Kristine snuck out of the house," then "stole her mom's car and drove it to the CVS pharmacy." *Id.* ¶ 179. At the CVS, she bought "Tagamet, an acid reduction medicine" that Sanctioned Suicide members recommended to prevent "vomiting after ingesting a deadly dose of Sodium Nitrite." *Id.* ¶¶ 106, 179. She then drove to a local park where she ingested a fatal dose

---

[1] Amazon disagrees with many of the allegations in the Amended Complaint but acknowledges that properly pleaded factual allegations must be accepted as true at the Rule 12(b)(6) stage. Still, it bears noting that many of the most inflammatory allegations are irrelevant. For instance, the Complaint asserts that Amazon "bundles … suicide kits" (Compl. ¶ 106)—an allegation that is transparently false—yet does not allege that Ethan or Kristine bought one of these supposed "kits."

1   of the Loudwolf Sodium Nitrite.  *Id.* ¶¶ 184–86.  The police found her the next day, and the

2   Coroner's Report determined her death was a "Suicide" due to "Sodium Nitrite Toxicity."  *Id.*

3   ¶¶ 185–86.

4   **B.    Ethan McCarthy Purchases Sodium Nitrite from Loudwolf and Intentionally
         Misuses it to Commit Suicide.**

5

6          Ethan McCarthy took his life at age seventeen in January 2021.  *See id.* ¶¶ 188, 195–98.

7   The Complaint does not allege that Ethan had any particular mental-health issues or offer a specific

8   explanation for his suicide.  Ethan bought Loudwolf Sodium Nitrite on January 1, 2021, using his

9   mother Nikki's Amazon account.  *Id.* ¶¶ 190, 194.  When Nikki asked her kids about the product,

10  after seeing an email confirming the purchase, Ethan denied knowing anything about it.  *Id.* ¶ 190.

11  She called Amazon customer service to cancel the order and was told that Amazon would inform

12  the manufacturer.  *Id.* ¶ 191.  But Loudwolf had already shipped it.  *Id.* ¶ 194.  The sodium nitrite

13  arrived in West Virginia a few days later, along with several other packages.  *Id.* ¶ 195.  One or two

14  mornings later, Nikki found "Ethan's still body lying in bed."  *Id.* ¶ 198.  There was a bottle of

15  Loudwolf Sodium Nitrite and "a glass with white dried powder and a spoon" on Ethan's desk.  *Id.*

16  ¶ 200.  The police determined his death was "a suicide, by ingestion of Sodium Nitrite."  *Id.* ¶ 201.

17  **C.    Plaintiffs Claim that Amazon Is Liable for Loudwolf's Lawful Sales of Sodium
         Nitrite that Kristine and Ethan Intentionally Misused to Commit Suicide.**

18         Ethan's Parents and the Jónssons bring this lawsuit against Loudwolf and Amazon on behalf

19  of their deceased children and themselves.[2]  *See* Compl. ¶¶ 34–46.  Their Amended Complaint

20  acknowledges that both sales were lawful under federal and state law, yet insists that Loudwolf and

21  Amazon are liable for the suicides.  *See id.* ¶¶ 118–21.  Count I is a claim for products liability.  *Id.*

22  ¶¶ 232–43.  Count II is a claim for negligence.  *Id.* ¶¶ 244–47.  And Count III—brought only by

23  Ethan's mother—is a claim for negligent infliction of emotional distress.  *Id.* ¶¶ 248–51.

24                                    **ARGUMENT**

25  **A.    This Court Lacks Personal Jurisdiction Over Amazon in This Case.**

26         This Court lacks personal jurisdiction over Amazon and therefore must dismiss the claims

27  _____

28  [2] The case was originally filed in California state court, then removed by Amazon.  *See* Dkt. #1.
    Plaintiffs acknowledge that this Court has subject-matter jurisdiction.  *See* Compl. ¶ 51.

1    against Amazon pursuant to Rule 12(b)(2) or transfer this case under 28 U.S.C. § 1406 to a district

2    that has jurisdiction.  Both general and specific personal jurisdiction are lacking here.

3        **General Jurisdiction:**   General jurisdiction is proper "only when the corporation's

4    affiliations with the State in which suit is brought are so constant and pervasive as to render it

5    essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (cleaned

6    up).  "The 'paradigm' forums in which a corporate defendant is 'at home,' … are the corporation's

7    place of incorporation and its principal place of business."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct.

8    1549, 1558 (2017) (cleaned up).  Amazon is incorporated in Delaware and has its principal place

9    of business in Washington.  Compl. ¶ 49; Decl. ¶ 3.

10        This is not an "exceptional" case where "a corporate defendant's operations in another

11   forum may be so substantial and of such a nature as to render the corporation at home in that State."

12   *BNSF Ry.*, 137 S. Ct. at 1558–59 (holding that railroad company having "over 2,000 miles of

13   railroad track and 2,000 employees in Montana" did not render it "at home" there).  Indeed,

14   Plaintiffs' assertion that Amazon is "at home" in California because it does "substantial business

15   in California," Compl. ¶ 54, is precisely the "formulation" of general jurisdiction that the Supreme

16   Court has rejected as "unacceptably grasping," *Daimler AG*, 571 U.S. at 138 (refusing to base

17   general jurisdiction on a "substantial, continuous, and systematic course of business").

18        **Specific Jurisdiction.**   Specific jurisdiction must be established not only for "each

19   defendant," *Bristol-Myers*, 137 S. Ct. at 1783 (cleaned up), but also "for each claim asserted against

20   a defendant."  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (cleaned up).  Specific

21   jurisdiction is lacking here because Plaintiffs' claims against Amazon do not "arise out of or relate

22   to the defendant's contacts with the *forum*."  *Bristol-Myers*, 137 S. Ct. at 1780 (cleaned up).[3]  To

23   meet the "arise out of" component, a plaintiff must establish that the defendant's "in-state activities

24   were … the 'but for cause' of [the plaintiff's] injury." *Yamashita v. LG Chem, Ltd.*, 48 F.4th 993,

25   996 (9th Cir. 2022).  The "relate to" component is met, in product-liability cases, if the defendant

26

27        [3] The arise-from-or-relate-to requirement is the second prong of the test for specific jurisdiction.
      *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).  Plaintiffs bear
28   the burden of establishing that the second prong is met.  *Id.*

1   "serves a market for a product in a State and that product causes injury in the State to one of its

2   residents." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1022 (2021).

3        Plaintiffs' claims against Amazon arise from and relate to contacts with Ohio and West

4   Virginia, not California.  Specifically, their claims are based on products that: (1) were purchased

5   from a third-party seller on Amazon.com from electronic devices in Ohio and West Virginia,

6   Compl. ¶¶ 19–20, 22, 25–26; (2) were shipped to Ohio and West Virginia, *id.* ¶¶ 174, 195; (3) were

7   misused in Ohio and West Virginia, *id.* ¶¶ 184–86; 197–201; and (4) allegedly caused injuries in

8   Ohio and West Virginia, *id.* ¶¶ 184–86; 197–201; 228–31.

9        The Supreme Court's *Bristol-Myers* decision resolves this case.  There, the Court held that

10  California could not exercise specific jurisdiction over product-liability claims brought by

11  nonresidents against a non-California defendant for injuries allegedly suffered outside California.

12  *Bristol-Myers*, 137 S. Ct. at 1782. As here, the "relevant plaintiffs are not California residents and

13  do not claim to have suffered harm in that State," and "all the conduct" by the out-of-state defendant

14  "giving rise to the nonresidents' claims occurred elsewhere."  *Id.*  Thus, "California courts cannot

15  claim specific jurisdiction" here.  *Id.*

16       As *Bristol-Myers* emphasizes, the fact that the injuries occurred out of state precludes

17  Plaintiffs from claiming specific jurisdiction in California.  The Ninth Circuit has repeatedly held

18  that, for tort claims against out-of-state defendants, "[h]arm suffered in the forum state is a

19  necessary element in establishing" specific jurisdiction. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136,

20  1144 (9th Cir. 2017); *see also, e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th

21  Cir. 1998) (same).  And the Supreme Court has consistently emphasized the importance of the fact

22  that the "product causes injury in the State to one of its residents."  *Ford*, 141 S. Ct. at 1022; *World-*

23  *Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (similar).

24       Plaintiffs' allegations cannot establish that the claims against Amazon arise out of or relate

25  to contacts that Amazon itself made with California.  The Amended Complaint's jurisdictional

26  allegations, *see* Compl. ¶¶ 54–59, which simply assert that Amazon "directed communications into

27  the [forum] and otherwise conducted business therein," are the kind of "bare bones assertions of

28  minimum contacts" that the Ninth Circuit has deemed "insufficient to establish a prima facie

showing of personal jurisdiction," *LegalForce RAPC Worldwide P.C. v. Swyers*, 2018 WL 3439371, at *4 (N.D. Cal. July 17, 2018) (cleaned up) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)).  An examination of those allegations confirms that conclusion.

Plaintiffs assert that their "causes of action arise out of Amazon's business activities within California, namely, the sale of Sodium Nitrite *through* Loudwolf."  Compl. ¶ 54 (emphasis added). But Amazon was not acting "through Loudwolf" because Loudwolf is a third-party seller—an independent entity.  *See* Compl. ¶¶ 20, 30, 65; Decl. ¶¶ 5, 14a–14e, 15.  Plaintiffs cannot impute to Amazon Loudwolf's conduct in, and contacts with, California unless Loudwolf was acting as Amazon's agent.  *See Iconlab, Inc. v. Bausch Health Cos.*, 828 F. App'x 363, 365 (9th Cir. 2020). And Loudwolf was not acting as Amazon's agent.  Loudwolf independently chose to sell the sodium nitrite and was responsible for all relevant aspects of its sale and shipment.  *See* Decl. ¶¶ 14a–14e; Decl., Ex. C at p. 8 § 13 (specifying "independent contractors" status); Decl., Ex. D at p. 5 § 13 (same); Decl., Ex. C at p. 11 § 18 (disclaiming general "agent" relationship); Decl., Ex. D at p. 7 § 18 (same).

Plaintiffs also attempt to establish jurisdiction by alleging that "Amazon contracted with Loudwolf to do business with Loudwolf in California."  Compl. ¶ 56.  But the Supreme Court has held that a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1781 (cleaned up); *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995) ("[M]erely contracting with a resident of the forum state is insufficient to confer specific jurisdiction….").  And the only aspect of Amazon's contract with Loudwolf that Plaintiffs cite as a basis for asserting specific jurisdiction is its provision "requir[ing] that Loudwolf indemnify Amazon."  Compl. ¶ 56.  The Ninth Circuit has held that—even for the indemnitor—an indemnity provision "cannot … fairly be characterized as an act by which" the indemnitor "has purposefully availed itself of the privilege of conducting activities in California."  *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1247 (9th Cir. 1984).  So, an indemnitee such as Amazon cannot be haled into a forum based on an indemnification clause.  *Id.*  What's more, Plaintiffs' claims against Amazon do not arise from or relate to Amazon's indemnification agreement with Loudwolf because "the forum" is not "the situs of the accident."  *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins.*,

907 F.2d 911, 914 (9th Cir. 1990).

In fact, the contract between Loudwolf and Amazon cuts against Plaintiffs' position.  It has a Washington choice-of-law provision and a forum-selection clauses that specifies a Washington or arbitral forum.  *See* Decl., Ex. C at pp. 10–11 (§ 18), 14; Decl., Ex. D pp. 6 (§ 18), 9.  That "is an important factor" cutting against specific jurisdiction.  *Clearwater Rei, LLC v. Focus Consulting Advisors, LLC*, 2011 WL 3022071, at *6 (D. Idaho July 22, 2011) (collecting cases); *Joseph Saveri L. Firm, Inc. v. Criden*, 696 F. App'x 189, 192 (9th Cir. 2017) (no purposeful availment where contract was enforced via private arbitration, not by a California court).   Also, Amazon "discharge[d its] contractual duties" outside of California.  *Picot*, 780 F.3d at 1212; *see* Decl., Ex. C pp. 5–6 (§ 7); Decl., Ex. D pp. 3–4 (§ 7).

Plaintiffs' remaining jurisdictional allegations are unavailing.  They assert that the sodium nitrite "was stored and shipped from California."  Compl. ¶ 57.  But it was Loudwolf, not Amazon, who did the storing and shipping.  *See* Decl. ¶¶ 6–7, 14d, 15.  Plaintiffs also assert that Amazon's failure to communicate certain information to Loudwolf—regarding reports of use of sodium nitrite for suicide and Kristine's cancellation of Ethan's order—were events that "occurred in California." Compl. ¶¶ 58–59.  But Plaintiffs fail to allege that any such action or inaction *by Amazon* occurred in California.  The member of Amazon's Customer Service Department—who received Nikki's cancellation request and sent the order cancellation request to Loudwolf—is not located in California.  Decl. ¶ 16.  Any "emails and phone calls" sent to Loudwolf from "outside of California" are not forum contacts.  *Perzow v. Hogeg*, 826 F. App'x 615, 616 (9th Cir. 2020) (citing 780 F.3d at 1213).  The Amazon product-safety team that Plaintiffs claim should have "notifi[ed] Loudwolf … that Sodium Nitrite was being … used for suicide" is not based in California.  Compl. ¶ 58; Decl. ¶ 17.  And any alleged failure to relay information to Loudwolf is obviously not a contact with California.  "A negligent act or failure to act outside the state cannot be considered an act or omission in the state." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 2009 WL 2849130, at *7 (D. Haw. Aug. 26, 2009) (cleaned up).

Plaintiffs also allege that Amazon has "fulfillment centers" and "an extensive sales distribution network" in California, "conducts substantial marketing and sales activities" there, and

has many employees and "offices" there.  Compl. ¶ 55.  But they do not allege that those facilities and employees played any role in the purchase and shipment of the products at issue.  Nor could they.  The products were stored and shipped by Loudwolf—not Amazon.  Decl. ¶¶ 6–7, 14d, 15.  The allegations are thus indistinguishable from the facts of *Bristol-Myers*, where there was no specific jurisdiction in California despite the defendant having five "facilities," "160 employees," "250 sales representatives" in California and sold "187 million Plavix pills" there, generating "more than $900 million" in revenue."  137 S. Ct. at 1778.

*        *        *

This Court should dismiss the claims against Amazon pursuant to Rule 12(b)(2).  Alternatively, it could transfer the "case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  This Court may "transfer[] under § 1406 … because of a lack of personal jurisdiction over [Amazon] in California."  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 n.2 (9th Cir. 2000).  Additionally, this Court has "broad discretion … to grant severance" prior to transfer.  *Lim v. Lim*, 2022 WL 3925284, at *2 (N.D. Cal. Aug. 30, 2022).  Severance and transfer to the Southern District of West Virginia and the Northern District of Ohio would be an appropriate remedy here, so that this case can be adjudicated on the merits in a district where each case may be properly heard.  *See, e.g.*, *Johnson v. Law*, 19 F. Supp. 3d 1004, 1010 (S.D. Cal. 2014).

## B.        Plaintiffs Allege No Viable Claims Against Amazon.

Independent of personal jurisdiction, the Court should dismiss all claims against Amazon because the Amended Complaint alleges no viable legal theory for holding it liable for Ethan's and Kristine's voluntary decision to intentionally misuse a lawfully purchased product to commit self-harm.  The well-established rule under the common law is that the act of suicide is a "voluntary choice" that "supersedes the defendant's liability."  William L. Prosser, *Law of Torts* § 49 (2d ed. 1955).  California, West Virginia, and Ohio all follow this rule.[4]  The Amended Complaint attempts to avoid this well-established rule by stretching common-law products liability and negligence doctrines to impose a novel duty on Amazon.  But such a duty is contrary to well-established law.

---

[4] *Green v. Healthcare Servs., Inc.*, 283 Cal. Rptr. 3d 482, 490 (Ct. App. 2021); *Moats v. Preston Cnty. Comm'n*, 521 S.E.2d 180, 188–89 (W. Va. 1999); *Fischer v. Morales*, 526 N.E.2d 1098, 1101 (Ohio Ct. App. 1987).

1.    **Plaintiffs Allege No Viable Claim Based on Ethan's Suicide.**

The facts alleged in the Complaint fail to state a claim for relief, based on Ethan's death, under either California or West Virginia law.

a.    **Count I Fails to Establish Product Liability Under California Law.**

Count I is styled as a "Products Liability" claim, but most of its allegations sound in negligence, not strict products liability. *Compare* Compl. ¶¶ 241.a–d, g, k (negligence), *with id.* ¶¶ 241.e–f, h, *and* 242 (products liability).[5]   The two products liability theories Count I does allege—defective warning and reasonable consumer expectations—are not legally viable here.

i.    **Count I Does Not Allege a Viable Failure-To-Warn Claim.**

Plaintiffs allege a "defective condition" for the sodium nitrite based on "fail[ing] to provide adequate warnings," not including "information on how to counteract Sodium Nitrite's affects [sic]," and not "warn[ing] consumers of the products use for death by suicide." Compl. ¶¶ 241.e, f, j. But Count I fails to establish the duty and causation elements for failure to warn.

**No Duty To Warn Was Violated.**  No duty to warn was violated for two reasons.

First, under "the obvious danger rule, … there is no need to warn of known risks under either a negligence or strict liability theory." *Johnson v. Am. Standard, Inc.*, 179 P.3d 905, 911–12 (Cal. 2008).  The rule applies to both "known risks and obvious dangers," *id.* at 912 (cleaned up), such as "the dangers of riding in the cargo bed" of a truck, *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1179 (9th Cir. 1997).  Here, Plaintiffs allege that "Amazon and Loudwolf" should have provided warnings about "the painful death Sodium Nitrite causes." Compl. ¶ 241.e.  But the risk of death was clearly "known" to Ethan, as he purchased and ingested the sodium nitrite for the very purpose of causing his own death. Compl. ¶¶ 187–201.  Plaintiffs cannot assert that "the painful" nature of sodium nitrite deaths makes a difference.  Sellers are not required to "warn[] users of every possible risk that could arise from" misusing the product. *Maneely*, 108 F.3d at 1180.  And it is "obvious to the ordinary consumer," *id.* at 1179, that ingesting industrial grade chemicals can

---

[5] There are "three types of product defects" under California law: "manufacturing defects, design defects, and warning defects." *Webb v. Special Elec. Co.*, 370 P.3d 1022, 1029 (Cal. 2016) The Complaint does not allege any issue with the "manufacturing" or "design" of the sodium nitrite. *Id.*  Nor could it.

result in painful bodily injury.  *See, e.g.*, *Greene v. A.P. Prods., Ltd.*, 717 N.W.2d 855, 861–62 (Mich. 2006) (risk of ingesting hair oil was "obvious" where it "was not marketed as safe for human consumption or ingestion" and its label listed "ingredients ... which would be unfamiliar to the average product user"); *Miles v. S.C. Johnson & Son, Inc.*, 2002 WL 1303131, at *4 (N.D. Ill. June 12, 2002) ("The dangers of ingesting Drano are obvious to the ordinary consumer, who presumably purchases the product with knowledge of—and in fact because of—its caustic properties.").

Second, a product's warning is "not in defective condition" when the product is "safe for use if" its instructions are "followed."  *Johnson*, 179 P.3d at 910 (quoting 2d Rest. § 402A cmt. j). That is the case here, as the sodium nitrite's bottle admonished that it was to be used for "experimental and analytical applications," along with "technical and household purposes," not for self-administered suicide.  Compl. ¶ 98.

**No Proximate Causation.**  Count I also fails to allege facts plausibly establishing that Amazon's supposed "failure to warn was a substantial factor in causing" Ethan's suicide.  *Huitt v. S. Cal. Gas Co.*, 116 Cal. Rptr. 3d 453, 468 (Ct. App. 2010).  The Complaint does not allege that Ethan read the warnings on the bottle's label or the customer reviews.  *See* Compl. ¶¶ 187–201. When "the person to whom the warning is directed does not read the warnings, there is no causation," regardless of any alleged inadequacies.  *Altman v. HO Sports Co.*, 821 F. Supp. 2d 1178, 1188 (E.D. Cal. 2011) (collecting cases).  Also, the Complaint lacks facts explaining how "provid[ing] information on how to counteract Sodium Nitrite's poisonous [e]ffects" or leaving up "reviews that warned consumers of the products [sic] use for death by suicide" would have altered Ethan's conduct.  Compl. ¶¶ 241.f, j.  If Ethan were purchasing sodium nitrite to commit suicide— as the Complaint alleges—then he would have no interest in counteracting its effects, and the reviews would have merely confirmed that it was an effective means of committing suicide.

### ii.    Count I Does Not Allege a Viable Ordinary-Consumer Expectation Claim.

Count I also asserts, without explanation, that Loudwolf and Amazon are strictly liable because "Sodium Nitrite was and is unsafe to an extent beyond that which would be contemplated by the ordinary consumer."  Compl. ¶ 242.  Such a threadbare recital of a legal test is not a plausible

-10-

1    basis for relief.  In any event, this theory fails because a product is defective under the test only if

2    it "failed to perform as safely as an ordinary consumer would expect when used in an intended or

3    reasonably foreseeable manner." *Boeken v. Philip Morris, Inc.*, 26 Cal. Rptr. 3d 638, 660 (Ct. App.

4    2005) (cleaned up).  As explained above, "an ordinary consumer" would not expect an industrial

5    grade chemical to be safe to swallow.  And sodium nitrite is not "intended" to be swallowed or used

6    to commit suicide.  *Id.*; *see* Compl. p. 14 (relaying intended uses described on bottle).

7                    **b.       Counts I And II Fail to Allege Negligence Under California Law**

8            Counts I and II also allege, in varying but related ways, that Loudwolf and Amazon were

9    negligent in selling the sodium nitrite to Ethan.  *See* Compl. ¶¶ 241.a–d, g, k, 245.b–c.  Specifically,

10   they allege that Loudwolf and Amazon were negligent for failing to place categorical restrictions

11   on the sale of sodium nitrite.  *See* Compl. ¶¶ 241.a–b, d, g, k.  The gravamen of these allegations is

12   that Amazon and Loudwolf had a duty "to ensure vulnerable, household-based individuals are not

13   purchasing poisonous chemicals."  *Id.* ¶ 241.g.  These various allegations invoke two general

14   theories of negligence liability.  The first is negligent entrustment, *See* Compl. ¶ 245.c; *see also*

15   Restatement (Second) of Torts § 390 (1965).  The second is violation of a purported statute-based

16   duty to refrain from "causing or aiding another person to attempt suicide. Compl. ¶ 207.  California

17   precedent squarely forecloses both theories.

18                    **i.       The Negligent Entrustment Theory Fails.**

19           First, the Complaint does not and cannot allege that Ethan belongs to a "legally recognized"

20   class of "incompetents."[6]  Under California law, "the supplier may be liable for a harm suffered

21   by" the person to whom the chattel was supplied, if "the person to whom the chattel is supplied is

22   one of a *class* which is *legally recognized* as so incompetent as to prevent them from being

23   responsible for their actions" or is in such a "condition … as to make him incapable of exercising

24   the care which it is reasonable to expect of a normal sober adult."  *Blake v. Moore*, 208 Cal. Rptr.

25   703, 707–08 (Ct. App. 1984) (quoting 2d Rest. § 390 cmt. c).  The Complaint does not allege facts

26

27           [6] There is a higher standard of incompetency to recover for "harm sustained by the incompetent"
     than for harm sustained by "third persons injured by the improper use made of the chattel by the
28   incompetent person."  Restatement (Second) Torts § 390 cmts. c-d.

                                                    -11-

1  establishing that Ethan belonged to a legal category of incompetents.

2      Second, California courts have consistently refused to recognize a cause of action for

3  negligent entrustment against a seller—even in cases involving sales to minors—if "the Legislature

4  has not likewise evidenced an intent to control the sale of" the product at issue.  *Holmes v. J. C.*

5  *Penney Co.*, 183 Cal. Rptr. 777, 779 (Ct. App. 1982).  The reasoning is that "permitting a cause of

6  action would effect a ban on the sale of [the product] by judicial fiat," and "such limitations are *not*

7  within the purview of the judiciary."  *Id.* (citing *Bojorquez v. House of Toys, Inc.*, 133 Cal. Rptr.

8  483, 484 (Ct. App. 1976)).  The Complaint acknowledges there was no legislative restriction on the

9  sale of sodium nitrite in the United States.  *See* Compl. ¶¶ 118–21.  Plaintiffs cannot seek "through

10  judicial fiat what the California and United States legislatures have each refused to provide by law."

11  *Casillas v. Auto-Ordnance Corp.*, 1996 WL 276830, at *6 (N.D. Cal. May 17, 1996).

12      Third, even if there were a general duty here, the Complaint still must allege facts

13  establishing that Amazon "knew, or had reason to know, that [Ethan] was reasonably likely to use

14  the [sodium nitrite] to harm himself."  *Jacoves v. United Merch. Corp.*, 11 Cal. Rptr. 2d 468, 487

15  (Ct. App. 1992).  Foreseeability must be assessed "during the normal course of the purchasing

16  process" and turns on whether the purchaser's "alleged demeanor was … on such a scale so as to

17  manifest to the ordinary observer that [the purchaser] was mentally impaired, incompetent or

18  irresponsible with regard to the handling of" the chattel.  *Id.* at 487–88.  In *Jacoves*, 20-year-old

19  Jonathan "attempted to buy a handgun and ammunition."  *Id.* at 487.  When he learned there would

20  be a 15-day waiting period, "he left the store without purchasing the handgun," then came back

21  later that day "and purchased a rifle, for which there was no statutorily mandated waiting period."

22  *Id.*  "At the time of his purchase, Jonathan appeared youthful, confused, distraught, and trembling."

23  *Id.*  Nevertheless, the California Court of Appeal held that "the facts alleged" were "insufficient, as

24  a matter of law, to state a cause of action … for negligent entrustment."  *Id.*  The court reasoned

25  that "[a] salesclerk in a sporting goods stores cannot reasonably be expected to have concluded,

26  from these observations alone, that Jonathan intended to commit suicide."  *Id.*

27      The Complaint does not allege any facts plausibly establishing that the Amazon employee

28  who received Nikki's cancellation request could have been "expected to have concluded … that

-12-

1  [Ethan] intended to commit suicide." *Id.*  To the contrary, the Complaint alleges that Ethan "never

2  showed signs of depression or suicidality."  Compl. ¶ 188.  If a "salesclerk" interacting with a

3  "confused, distraught, and trembling" young man trying to buy a gun cannot be expected to

4  conclude that the young man "intended to commit suicide," *Jacoves*, 11 Cal. Rptr. 2d at 487–88,

5  then a customer service representative receiving a cancellation request for an order of an obscure

6  industrial chemical—without ever seeing the allegedly incompetent person—cannot be expected to

7  conclude that someone at the address intends to use it to commit suicide, *see* Compl. ¶ 26.

8      Plaintiffs also cannot rely on Ethan's "age," status as a "household-based individual[]," or

9  other demographic membership as a basis to impose liability.  Compl. ¶¶ 227, 241.g.  California

10  courts have repeatedly held that "knowledge that the user of a chattel belongs to a high risk class

11  does not make the supplier of the chattel liable for negligent entrustment." *Lindstrom v. Hertz*

12  *Corp.*, 96 Cal. Rptr. 2d 874, 879 (2000) (cleaned up).  Those holdings are based on the principle

13  that "it is for the Legislature, not the courts, to determine whether tort liability" under a negligent

14  entrustment theory "should be based on an individual's membership in a class." *Flores v. Enter.*

15  *Rent-A-Car Co.*, 116 Cal. Rptr. 3d 71, 76–77 (Ct. App. 2010) (cleaned up).  Likewise, Plaintiffs'

16  contention that Amazon had a duty to adopt various additional safeguards and procedures to prevent

17  potentially suicidal teenagers from purchasing sodium nitrite, *see* Compl. ¶¶ 227, 241.b, d, g, is

18  inconsistent with California courts' refusal to impose on sellers "a duty to police purchasers who

19  may be purchasing" a product with the intent to misuse it.  *Holmes*, 183 Cal. Rptr. at 779.

20              **ii.      The Statute-Based-Duty Theory Fails.**

21      Count II also asserts that Loudwolf and Amazon violated a duty "[t]o not assist or aid in a

22  suicide attempt" that is codified in "California Penal Code 401."  Compl. ¶¶ 207, 245.b.  But even

23  assuming that such a criminal statute can be the basis for a common-law negligence claim, the

24  Complaint does not allege the facts necessary to establish that Loudwolf or Amazon "*deliberately*

25  aid[ed], advise[d], or encourage[d] another to commit suicide."  Cal. Penal Code § 401(a)

26  (emphasis added).  The California Court of Appeal has held, in a civil wrongful death case, that the

27  statute is not violated unless, among other things, the defendant "specifically intended [the

28  decedent's] suicide." *McCollum v. CBS, Inc.*, 249 Cal. Rptr. 187, 198 (Ct. App. 1988).  The

Complaint falls far short of alleging any facts that plausibly suggest a specific intent to cause Ethan's suicide.  At most, it alleges that Loudwolf and Amazon "intentionally disseminated" sodium nitrite "although they knew, or should have known, that there were emotionally fragile people" that might misuse it for suicide.  *Id.*  That is not enough.[7]

### c.     Counts I and II Fail to State Claims Under West Virginia Law.

If this Court were to somehow conclude that Counts I and II state claims for relief under California law, dismissal of Ethan's Parents' claims is still warranted.  Under the "governmental interest test" that California courts apply to choice-of-law questions, California has only a "hypothetical" interest in applying its liability law in cases where "the injured persons are not California residents and were not injured in California."  *Chen v. L.A. Truck Ctrs., LLC*, 255 Cal. Rptr. 3d 559, 566 (Ct. App. 2019); *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 534–37 (Cal. 2010) (holding same where plaintiff was injured in Oklahoma, then moved to California).  Here, West Virginia has limitations on suicide-based wrongful-death actions, product-liability claims, and general negligence, which it has a legitimate interest in having applied to claims arising from "out-of-state companies … do[ing] business within the state."  *Chen*, 255 Cal. Rptr. 3d at 565.

### i.     West Virginia Does Not Recognize Ethan's Parents' Claims.

The West Virginia Supreme Court has held that "recovery for wrongful death by suicide may be possible," but only in limited situations.  *Moats*, 521 S.E.2d at 189.  It has stressed that such actions "have generally been barred because the act of suicide is considered deliberate and intentional, and therefore, an intervening act that precludes a finding that the defendant is responsible."  *Id.* at 188.  The court has recognized just two potential exceptions: (1) "where the defendant is found to have actually caused the suicide," and (2) "where the defendant is found to have had a duty to prevent the suicide from occurring."  *Id.* at 188 (citing *McLaughlin v. Sullivan*, 461 A.2d 123, 124 (N.H. 1983)).  Neither applies here.

---

[7] Plaintiffs also make conclusory allegations that Amazon was negligent for failing to follow its own guidelines, such as its "ban on not selling unsafe products" and "its own terms and conditions for product labeling. Compl. ¶¶ 227, 241.h.  A seller's alleged failure to follow its own "safety minded" policies is not a basis for imposing a legal duty of care, as it would "discourage[]" sellers from taking the "initiative" to adopt such policies.  *Holmes*, 183 Cal. Rptr. at 779 n.1.

The West Virginia Supreme Court has yet to apply the first exception.  But the authorities that the court cited in *Moats* make clear that the exception does not apply here.[8]  *See id.*  This is not a case where Amazon's allegedly "tortious act … caused a mental condition in the decedent that proximately resulted in an uncontrollable impulse to commit suicide, or prevented the decedent from realizing the nature of his act."  *McLaughlin*, 461 A.2d at 124.  Ethan's parents do not allege that he had "a mental condition" caused by Amazon.  *Id.*; Compl. ¶¶ 187–91.  The first "exception also encompasses cases in which a statute prohibiting the sale of certain drugs or liquor was *violated* by the defendant."  *McLaughlin*, 461 A.2d at 124 (emphasis added).  That is also not the case here.  Plaintiffs acknowledge that the sale of sodium nitrite here was lawful.  *See* Compl. ¶¶ 118–21.

The second exception also does not apply.  It involves cases where the decedent and the defendant have "some relationship which would give rise to a duty to prevent suicide."  *Morris*, 866 S.E.2d at 69 (cleaned up).  The exception requires both a "caretaking relationship and the caretaker's knowledge that the individual is 'suicidal' for purposes of imposition of duty."  *Id.* at 70 (cleaned up).  Neither requirement is met here.  Amazon does not have a "caretaking relationship" with purchasers.  Such caretaking relationships are limited to "custodial" institutions that have "actual physical custody and control over … persons" and to "mental health professionals" caring for patients.  *Id.* at 69–70.  Also, Amazon did not have "knowledge" that Ethan was suicidal.  *Id.* at 70.  Plaintiffs allege that he used his mother's account to make the purchase and that he exhibited no signs of suicide risk.  *See* Compl. ¶¶ 26, 188.

### ii.    Counts I and II Fail Under West Virginia Common Law.

Beyond the suicide-specific limitation on tort claims, Ethan's Parents' claims fail under West Virginia's established product-liability and negligence doctrines.

**Product Liability.**  Count I fails to state a product-liability claim under West Virginia law.  *See* Compl. ¶¶ 232–43 First, under West Virginia's product-liability doctrine, defendants are "not liable when the product is materially altered before use, or is combined with another product which

---

[8] The West Virginia Supreme Court's most recent decision on wrongful-death claims arising from suicide also looked to the New Hampshire Supreme Court's *McLaughlin* opinion to elaborate on the exceptions.  *See Morris v. Corder*, 866 S.E.2d 66, 70 (W. Va. 2021).

1   makes it dangerous." *Landis v. Hearthmark, LLC*, 750 S.E.2d 280, 291–92 (W. Va. 2013) (cleaned

2   up).  That is precisely what occurred here.  Ethan "mixed" the sodium nitrite "with water" then

3   drank it.  Compl. ¶¶ 6, 200; *see also id.* ¶¶ 130–33.  Second, "there is no duty to warn of obvious

4   dangers present in products." *Roney v. Gencorp*, 654 F. Supp. 2d 501, 503 (S.D.W. Va. 2009).  As

5   explained above, the danger of ingesting industrial chemicals—to commit suicide without medical

6   supervision—is obvious.  *See supra* at 9–10.

7        **Negligence.**  Counts I and II fail to state a negligence claim under West Virginia law.  The

8   Complaint's negligent-entrustment theory, *see supra* at 11–12, fails because "the critical element

9   of a negligent entrustment action" under West Virginia common law "is the "improper" entrustment

10   of the chattel "to a person who is known to be likely to be likely to cause an unreasonable risk of

11   harm *to others*." *Huggins v. Tri-Cnty. Bonding Co.*, 337 S.E.2d 12, 17 (W. Va. 1985) (emphasis

12   added).  The Complaint does not allege that Ethan was a danger "to others," only to himself.  *Id.*;

13   Compl. ¶¶ 187–201.  The Complaint's statutory-violation theory, *see supra* at 13–14, also fails

14   because, as the Complaint concedes, West Virginia has no statute outlawing "aiding in another

15   person's death." Compl. ¶ 209.  Thus, there is no "violation of a statute" to support a "*prima facie*

16   negligence" case.  *Gillingham v. Stephenson*, 551 S.E.2d 663, 670 (W. Va. 2001) (cleaned up).

17   Plaintiffs cannot invoke the "common law tradition allowing prosecution for aiding a suicide."

18   Compl. ¶ 209.  Even if they could, that tradition "provides no general duty to protect others from

19   self-inflicted harm." *Webstad v. Stortini*, 924 P.2d 940, 945 (Wash. Ct. App. 1996).

20                    **d.    Count III Fails to State an NIED Claim.**

21        Count III fails to state an NIED claim—under both California and West Virginia law—for

22   two reasons.[9]  First, an NIED claim "is not considered an independent tort, but rather is derived

23   from the tort of negligence." *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1192 (S.D. Cal.

24   2010); *accord Stump v. Ashland, Inc.*, 499 S.E.2d 41, 47 (W. Va. 1997) (requiring that the alleged

25   distress be "a result of defendant's negligent conduct" (cleaned up)).  Because Count II fails to state

26   a negligence claim against Amazon, *see supra* at 14–16, Count III necessarily fails to state an NIED

27

28   [9] Count III is styled as a claim brought only by Ethan's mother, Nikki Maynor, and not by any other Plaintiffs.  *See* Compl. at p. 39.

claim.  Second, NIED claims are limited to "plaintiffs who personally and contemporaneously perceive the injury-producing event."  *Ko v. Maxim Healthcare Servs.*, 272 Cal. Rptr. 3d 906, 916 (Ct. App. 2020) (cleaned up); *Stump*, 499 S.E.2d at 47 (same).  Ethan's mother found him the morning after he committed suicide.  *See* Compl. ¶¶ 198, 231.  So, there cannot be an NIED claim.

### 2.  The Complaint Fails to State a Viable Claim for Kristine's Death.

The Jónssons bring the same two claims—Products Liability and Negligence—as Ethan's Parents.  *See* Compl. ¶¶ 232–47.  The Jónssons' claims fail under California law for the same reasons as discussed above.  *Supra* at 9–14.  The Jónssons' claims also fail under Ohio law.  *See infra*.  Accordingly, because Kristine's injury and death occurred in Ohio, *see* Compl. ¶ 184, this Court cannot hold Amazon liable for her death, *see supra* at 14 (discussing choice of law).

### a.  The Ohio Product Liability Act Preempts the Jónssons' Claims.

The Ohio Product Liability Act ("OPLA") has "abrogated all common law claims relating to product liability causes of actions."  *Parker v. ACE Hardware Corp.*, 104 N.E.3d 298, 304 (Ohio Ct. App. 2018).  The Act abrogates Plaintiffs' claims because they all "seek recovery of compensatory damages based upon a death allegedly caused by … marketing of a product [sodium nitrite], and/or a warning or lack thereof relative to that product.  *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 919 (N.D. Ohio 2009).  And the Act bars recovery against Amazon because, under Ohio Supreme Court precedent, "Amazon is not a supplier" under the OPLA.  *Stiner v. Amazon.com, Inc.*, 164 N.E.3d 394, 401 (Ohio 2020).

The OPLA's purpose—expressly codified by the Legislature—is "to abrogate all common law product liability claims or causes of action."  Ohio Rev. Code § 2307.71(B).  It subsumes every "claim or cause of action … that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person [or] emotional distress … that allegedly arose from … the design … or marketing of [a] product … [or] … [a]ny warning or instruction, or lack of warning or instruction, associated with that product."  *Id.* § 2307.71(A)(13).

Plaintiffs cannot thwart the OPLA's preemptive effect by artful pleading or creative characterization of their claims.  It is "[t]he essential nature of the substantive allegations of the plaintiff's claim" that "determines the claim's true nature."  *Volovetz v. Tremco Barrier Sols., Inc.*,

-17-

74 N.E.3d 743, 753 (Ohio Ct. App. 2016).  So a claim is preempted if "[t]he actionable conduct that forms the basis of the negligence claim—negligent research, manufacturing, testing, marketing, and failure to warn—is the same conduct that the OPLA defines as giving rise to a 'products liability claim.'" *Stratford v. SmithKline Beecham Corp.*, 2008 WL 2491965, at *5 (S.D. Ohio June 17, 2008) (citation omitted).

The Jónssons' claims allege that "Amazon and Loudwolf, as product sellers, are liable" for Kristine's suicide using the sodium nitrite sold by Loudwolf.  *See* Compl. ¶¶ 241, 244.  These claims fall squarely within OPLA. Count I seeks to hold "Amazon and Loudwolf" liable based on their alleged conduct in "selling" the sodium nitrite to Kristine, as well as "fail[ing] to provide adequate warnings" and other "information" regarding the sodium nitrite.  Compl. ¶ 241.a–k.  So it is a claim based on the "marketing" of the sodium nitrite,[10] as well as the "warning or instruction, or lack of warning or instruction, associated with" the sodium nitrite.   Ohio. Rev. Code § 2307.71(A)(13)(a)–(b).  Likewise, Count II claims "Amazon and Loudwolf breached" various duties of care through their "tortious conduct."  Compl. ¶¶ 245–47.  Count II does not identify any "tortious conduct" separate from the acts alleged in Count I, all of which fall under the "marketing" and "failure to warn" provisions of the OPLA.  *Stratford*, 2008 WL 2491965, at *5.  Indeed, all of "the factual allegations in the complaint relate exclusively to [Loudwolf and Amazon's] involvement with [sodium nitrite], which is a product."  *Miles*, 612 F. Supp. 2d at 922.  So "any common law claims arising out of those factual allegations are product liability claims—not, as Plaintiffs would have it, general negligence claims."  *Id.*

The OPLA's preemption of their common-law claims is decisive because the Jónssons cannot state a claim against Amazon under the OPLA.  The Jónssons allege claims under the common law, Compl. ¶¶ 232–47, but "claims brought pursuant to the common law, instead of the OPLA, are now routinely dismissed."  *WEL Cos. v. Haldex Brake Prods. Corp.*, 467 F. Supp. 3d 545, 558 (S.D. Ohio 2020) (collecting cases).  Additionally, Amazon cannot be liable under the

---

[10] Ohio Courts have held that the plain meaning of "marketing" is "an aggregate of functions involved in transferring title and in moving goods from producer to consumer."  *Westfield Cos. v. O.K.L. Can Line*, 804 N.E.2d 45, 50 (Ohio Ct. App. 2003) (citation omitted).

OPLA in third-party-seller cases like this one.  The OPLA limits liability to "manufacturers" and "suppliers" only.  *See* Ohio Rev. Code § 2307.74–77 (outlining manufacturer liability); *id.* § 2307.78 (outlining supplier liability).  Plaintiffs allege that Loudwolf is the manufacturer, not Amazon.  *See* Compl. ¶ 90.  And Amazon is not a "supplier" in this case because Kristine purchased the sodium nitrite from Loudwolf, which is a "third-party seller."  Compl. ¶¶ 20, 30, 65.

The Ohio Supreme Court has held that, in cases involving sales of third-party sellers' products, "Amazon is not a supplier … for the purposes of the Ohio Products Liability Act." *Stiner*, 164 N.E.3d at 401.  In *Stiner*, the plaintiff-father brought various "product-liability and negligence claims" against Amazon, arising from his son's death after using a caffeine powder purchased from "a third-party vendor" through Amazon.com.  *Id.* at 396, 398.  The Ohio Supreme Court concluded that the claims "all depend[ed] on whether Amazon is a 'supplier' under the Act." *Id.* at 398.  And it held that Amazon was not "a 'supplier' under the Act" because it does not "exercise control over the product itself sufficient to make it a 'supplier' under the Act." *Id.* at 399–400.

### b.    The Jónssons' Claims Fail Under Ohio Tort Law.

The Jónssons also cannot state a claim under the common law that the OPLA preempted.

**Products Liability.**  Count I cannot state a claim for products liability under Ohio common law.  Pre-OPLA common law is clear that there is no duty to warn where the product's danger is "fairly obvious." *Taylor v. Yale & Towne Mfg. Co.*, 520 N.E.2d 1375, 1377 (Ohio Ct. App. 1987). The hazard of sodium nitrite was not only known to Kristine; she allegedly purchased it specifically because she intended this hazard to result in her own death.  *See* Compl. ¶¶ 116, 160, 162, 170

**Negligence.**   The Complaint's claims for negligence, under negligent-entrustment and statutory-based theories, *see supra* at 3, are not viable under Ohio common law.

First, the Jónssons allege that Amazon breached a purported duty "[t]o not supply a substance for the use of another whom it knew or had reason to know to be likely to use it in manner involving unreasonable risk of physical harm to himself."  Compl. ¶ 245.c.  This is a negligent-entrustment claim under § 390 of the Second Restatement.  *See supra* at 11–12.  But "Ohio courts have not adopted Section 390 of the Restatement." *M.M. v. M.F.*, 2020 WL 6342653, at *4 (Ohio Oct. 29, 2020).  Even if they had, the cause of action cannot apply here.  As with Ethan, Kristine is

not the kind of "incompetent" who can bring a claim for her own injuries.  *See supra* at 11–12.  Also, § 390 applies to the "supplier" of "a chattel."  2d Rest. § 390.  But the OPLA preempts any such common-law action by defining when a "supplier" is liable for "negligence" in supplying a "product"—and the Ohio Supreme Court has held that Amazon is not a supplier in case like this one.  *See supra* at 17–19.

Second, the Jónssons claim that Amazon breached its duty "[t]o not assist or aid in a suicide attempt," which they base on "Ohio Revised Code Section 3795," a criminal statute.  Compl. ¶¶ 209, 245.b.  Courts are "under no compulsion to accept" criminal statues "as defining any standard of conduct for purposes of a tort action."  2d Rest. Torts § 286, *cmt. d*.  In any event, the facts alleged do not establish a violation of Section 3795, which criminalizes "knowingly [p]roviding the physical means by which the other person commits … suicide."  Ohio Rev. Code § 3795.04(A)(1).  It was Loudwolf—not Amazon—who was "providing" the sodium nitrite to Kristine.  *See* Compl. ¶¶ 57, 65.  Also, the defendant must act "knowingly … with the *purpose* of helping another person to commit or attempt suicide."  Ohio Rev. Code § 3795.01(A) (emphasis added).  The Complaint does not and cannot allege facts establishing that Amazon acted with the "purpose of helping" Kristine commit suicide.  *Id.*  At most, it alleges that Amazon did not proactively restrict the sale of sodium nitrite or adopt procedures to identify purchases of sodium nitrite in "unusual circumstances" that could indicate an increased risk of suicide.  Compl. ¶ 227.  Such conduct is not the kind of "specific intention to cause a certain result" that is necessary to "act[] purposely" under Ohio law.  *State v. Shuck*, 166 N.E.3d 122, 127 (Ohio Ct. App. 2020) (cleaned up).

## CONCLUSION

This Court should grant Amazon's motion and either sever Plaintiffs' respective clams and transfer them to the Northern District of Ohio and Southern District of West Virginia, or dismiss the claims against Amazon outright.

1  Dated:  January 3, 2023                          **PERKINS COIE LLP**

2

3                                                   By: */s/ Steven G. Williamson*

4                                                   Steven G. Williamson, Bar No. 343842
                                                    Gregory F. Miller (pro hac vice)

5

6                                                   *Attorneys for Defendant Amazon.com, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3    This is to certify that a true and correct copy of the above and foregoing has been served

4    upon all counsel of record, via the Court's CM/ECF system and US Mail, on January 3, 2023, as

5    follows:

6          Hannah Meropol (CA Bar No. 340095)
     Carrie Goldberg (pro hac vice)

7    Naomi Leeds (pro hac vice)
     C.A. Goldberg, PLLC

8    16 Court St., 33rd Floor
     Brooklyn, NY 11241

9    Telephone: 646-666-8908
     Fax: 347-599-9998

10   Email: hannah@cagoldberglaw.com

11   *Attorneys for Plaintiffs*

12

13            */s/ Steven G. Williamson*
              Steven G. Williamson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28