Hannah Meropol (CA Bar No. 340095)
Carrie Goldberg (*Pro hac vice*)
Naomi Leeds (*Pro hac vice*)
**C.A. GOLDBERG PLLC**
16 Court Street 33rd Floor
Brooklyn, NY 11241
Telephone: 646-666-8908
Email: carrie@cagoldberglaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS MCCARTHY and MARTINIQUE MAYNOR, individually and NICHOLAS MCCARTHY as successor-in-interest to ETHAN MCCARTHY a deceased individual; LAURA JÓNSSON and STEINN JÓNSSON, individually, and LAURA JÓNSSON as successor-in-interest to KRISTINE JÓNSSON, a deceased individual, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., a Delaware corporation, and LOUDWOLF, INC., a California corporation, <br> Defendants. | Case No.: 3:22-cv-05718-JD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS OR TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: 02/09/2023 <br> Time: 10:00 AM <br> Judge: Hon. James Donato <br><br> [Removed from the Superior Court of the State of California for the County of Alameda, Case No. 22cv018942] <br><br> First Amended Complaint Filed: December 12, 2022 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED ................................................................1

INTRODUCTION .............................................................................................................1

FACTS ..............................................................................................................................3

ARGUMENT ....................................................................................................................4

I.    Legal Standard ...............................................................................................4

II.   The Exercise of Specific Personal Jurisdiction Over Amazon is Proper in California ...........5

A.    Prong One: Amazon purposefully avails itself of the California market ....................5

B.    Prong Two: Amazon's California activities caused Plaintiffs' injuries ......................8

C.    Prong Three: The exercise of jurisdiction over Amazon comports with fair play and substantial justice—and, therefore, is reasonable ........................9

III.  The Exercise of General Personal Jurisdiction is Proper in California ................................12

A.    Under *Daimler*, general jurisdiction extends to forums beyond Amazon's principal place of business and place of incorporation...............................12

B.    The Court should weigh two factors to apply the "exceptional case" theory...........12

C.    The Court has general jurisdiction over Amazon.com, Inc. pursuant to the exceptional case theory.......14

IV.   In the Alternative, The Court Should Grant Jurisdictional Discovery or Transfer this Action to the U.S. District Court for the Western District of Washington ....................................18

A.    The Court should grant jurisdictional discovery if it finds that "a more satisfactory showing of the facts in necessary" ..................................18

B.    In the alternative, the Court should transfer this action to the U.S. District Court for the Western District of Washington ....................19

CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Balland v. Savage*, 65 F.3d 1495 (9th Cir. 1995). ..............................................................4

*Boschetto v. Hansing,* 539 F.3d 1011 (9th Cir. 2008) ......................................................18

*Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017)....................................9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...............................................2, 9

*China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. 05-CV-1793-JW, 2005 WL 1513153 (N.D. Cal. June 27, 2005) ...........................................................................4

*Daimler AG v. Bauman*, 134 S.Ct. 746, 761 n.19 (2014)...........................................passim

*eMag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL 3783548 (N.D. Cal. Dec. 21, 2006)........18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017 (2021)............................6, 7, 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846 (2011). ............................4, 5

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003)....18

*Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010).......................................................12, 13

*International Shoe Co. v. Washington*, 66 S.Ct. 154 (1945) ...........................................4

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984) ...............................................2, 7, 17

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) ................................4

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014). ........................................15

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017)........................................5, 9

No. 2:20-cv-08179-JAM-AC, 2021 WL 1534205 (E.D. Cal. April 19, 2021). ...........................16

*Page v. Broberg*, No. 22-cv-06194-JSW, 2023 WL 105094 (N.D. Cal. Jan. 4, 2023) ...................4

*Perkins v. Benguet Consol. Mining Co.*, 72 S.Ct. 413 (1952)........................................17

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991). ..............................................10

*Scott v. Amazon.com, Inc.*, No. 22-2-01739-2 SEA (Wash., King Cnty., Dec. 30, 2022) ............11

*Serje v. Rappi, Inc.*, 2021 No. 19-cv-07415-VC, 2021 WL 2633536 (N.D. Cal. Jun. 25, 2021) .12

*South Dakota v. Wayfair, Inc.*, 138 S.Ct. 2080 (2018)...............................................14

*Walden v. Fiore*, 571 U.S. 277 (2014). ...............................................................7, 9

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980).............................................2, 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006)..................................5

## **Statutes**

28 U.S.C. § 1406 ........................................................................................................................1

Cal. Civ. P. Code § 410.10. ........................................................................................................4

West's Ann. Cal. Penal Code § 401. ..........................................................................................9

## **Rules**

Fed. R. Civ. P. 12(b)(2) .........................................................................................................1, 2, 4

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### STATEMENT OF ISSUES TO BE DECIDED

Whether this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) or transferred under 28 U.S.C. § 1406.

### INTRODUCTION

The Court should deny Defendant Amazon.com, Inc.'s Rule 12(b)(2) motion to dismiss, because the exercise of both specific and general jurisdiction is proper in the State of California.

Amazon.com, Inc.'s (hereinafter "Amazon") conduct is both integral to this case and inextricably tied to California. This lawsuit arises out of Amazon's business activities within California, namely, the sale of Loudwolf Sodium Nitrite – a poison Amazon knows has no legitimate use in pure form outside research or medical institutions and knows is used for suicide – to 16-year-old Kristine Jónsson and 17-year-old Ethan McCarthy. Dkt. No. 15 (hereinafter, "FAC") ¶¶ 1-33, 54.

Amazon's business contacts with California far outstrip its contacts with any other state. It operates more facilities in California than any other state, generates substantially more revenue in California than in other states, maintains an extensive sales distribution network within the State, houses the largest workforce population in California compared to other states, operates at least eleven California offices, and conducts substantial marketing and sales activities within the State. *Id.* ¶ 55. Declaration of Carrie Goldberg (hereinafter "Goldberg Decl."), ¶¶ 5-7, 9.

Amazon contracted to do business with Defendant Loudwolf, Inc. (hereinafter "Loudwolf"), a California corporation with its sole place of business in California. Amazon required that Loudwolf indemnify Amazon from all claims from customers and to hire counsel of its choosing in the event of litigation and is now enforcing this indemnity clause against Loudwolf. *Id.* ¶ 56. *Goldberg Decl.* ¶ 13. Loudwolf's inventory of Sodium Nitrite was stored and shipped from California to the Plaintiffs. *FAC* ¶ 57. Amazon's conduct of withholding information from Loudwolf of Amazon's prior notice that Sodium Nitrite was being purchased and used for suicide occurred in California. *Id.* ¶ 58. Further, the events surrounding whether Amazon properly notified Loudwolf of the cancellation of the Sodium Nitrite order from Nikki

McCarthy occurred in California—as did the ultimate shipment of the Sodium Nitrite. *Id.* ¶ 59.

On January 3, 2023, Amazon filed a motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Dkt. 25 (hereinafter "Motion to Dismiss").

California State and Federal law prevent defendants from being dragged into court based on "'random,' 'fortuitous,' or 'attenuated' contacts" or the "unilateral activity of another party or a third person." *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299 (1980). Plaintiffs have sufficiently alleged that Amazon's own conduct creates a "substantial connection" with California "such that [it] should reasonably anticipate being haled into court there," under theories of both specific and general jurisdiction. *Burger King*, 471 U.S. at 475-476, 486 (internal quotation marks omitted).

Specific jurisdiction is proper because Amazon purposefully availed the California market, Amazon's activities in California give rise and relate to Plaintiffs' claims, and justice is served by California courts adjudicating the claims against Amazon. Ultimately, Amazon's rendition of a forum-injury requirement selectively and inaccurately depicts caselaw that – if true – would erect such a high jurisdictional hurdle that no court would be able to serve the purpose of the "minimum contacts" test: guaranteeing fairness by providing defendants notice of the potential for litigation.

The exercise of general jurisdiction is also proper. The Supreme Court's opinion in *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 n.19 (2014), instructs that general jurisdiction can extend beyond a corporation's principal place of business and state of incorporation, and Amazon's exceptional operations in California render it at home in California. Amazon's contacts with California are extensive and prevalent enough that subjection to litigation in the forum is a predictable consequence—one that Amazon should (and did) anticipate.

The purpose of a jurisdictional inquiry is to ensure defendants are reasonably aware that litigation may occur in a particular forum based on the defendants' own conduct. It would run counter to that very purpose if Plaintiffs were denied their day in court and Amazon's homicidally negligent conduct – which caused a California company to ship a known suicide chemical from

California across state lines to two children, resulting in both of their deaths – were protected on jurisdictional grounds.

## FACTS

Amazon, an online platform and the world's largest retailer, sold 99.6% pure Loudwolf Sodium Nitrite to its customers. *FAC* ¶¶ 1, 5, 10, 97. Since at least 2018, Amazon has received communications from individuals alerting the company that Sodium Nitrite had killed their family members. *Id.* ¶¶ 7, 11. Amazon systematically removes the 1-star reviews parents leave about the product causing suicide and has gone so far as to revoke their ability to comment on any products. Yet Amazon has continued selling Sodium Nitrite to individuals, including to children. *Id.* ¶¶ 122-4.

On September 24, 2020 16-year-old Kristine Jonsson created an Amazon account and purchased Loudwolf Sodium Nitrite. *Id.* ¶¶ 20, 173 She was found dead in her car on September 30, 2021. The cause of death was "Sodium Nitrite Toxicity." *Id.* ¶ 21, 184-6. On January 1, 2021, 17-year-old Ethan McCarthy purchased Sodium Nitrite from his mom's account. *Id.* ¶¶ 22, 26, 190. When she saw the mystery purchase, she canceled it. *Id.* ¶¶ 26, 191-3. Yet it was delivered anyway. *Id.* ¶¶ 23, 194. On January 7, 2021, Ethan was found dead in his bedroom. *Id.* ¶¶ 23, 196-200. The cause of death was "Sodium Nitrite intoxication." *Id.* ¶ 201.

Plaintiffs' causes of action arise out of Amazon's business activities within California, namely, the sale of Sodium Nitrite through Loudwolf. *Id.* ¶ 54. Amazon's extensive contacts with California are substantial compared to its contacts with other states, including comparatively more employees and facilities, greater revenue, and an extensive sales distribution network within the State. *Id.* ¶ 55. *Goldberg Decl.* ¶¶ 4-9. It conducts substantial marketing and sales activities within the State. *FAC* ¶ 55. Amazon contracted to do business with Loudwolf in California, including extreme requirements that Loudwolf indemnify Amazon from all claims from customers and to hire counsel of its choosing. *Id.* ¶ 56. Loudwolf's inventory of Sodium Nitrite was stored and shipped from California to the Plaintiffs. *Id.* ¶ 57. The events surrounding whether Amazon withheld notification to Loudwolf of Amazon's prior notice that Sodium Nitrite was being purchased and used for suicide occurred in California. *Id.* ¶ 58. The events

surrounding whether Amazon properly delivered to Loudwolf notification of the cancellation of the Sodium Nitrite order from Nikki McCarthy occurred in California, as did the ultimate shipment of the Sodium Nitrite. *Id.* ¶ 59.

# ARGUMENT

## I.    Legal Standard

Where a defendant moves to dismiss for a lack of personal jurisdiction under FRCP 12(b)(2), a district court must accept any uncontroverted allegations in the plaintiff's complaint and draw all reasonable inferences in the plaintiff's favor. *Page v. Broberg*, No. 22-cv-06194-JSW, 2023 WL 105094, at *2 (N.D. Cal. Jan. 4, 2023) (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9ᵗʰ Cir. 2010)). Absent an evidentiary hearing, the plaintiff "need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Balland v. Savage*, 65 F.3d 1495, 1498 (9ᵗʰ Cir. 1995). In other words, the plaintiff must only produce evidence which, taken as true, is sufficient to establish personal jurisdiction. *Page*, No. 22-cv-06194-JSW, 2023 WL 10594, at *2 (citing *China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes*, No. 05-CV-1793-JW, 2005 WL 1513153, at *1 (N.D. Cal. June 27, 2005)).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Daimler*, 134 S.Ct. at 753. California's long-arm statute permits the exercise of personal jurisdiction to the extent allowed by the United States Constitution. Cal. Civ. P. Code § 410.10. Accordingly, upon a motion to dismiss for a lack of personal jurisdiction under FRCP 12(b)(2), the relevant inquiry is whether the exercise of personal jurisdiction is consistent with the limits imposed by federal due process. *Daimler*, 134 S.Ct. at 753.

In the wake of the Supreme Court's decision in *International Shoe Co. v. Washington*, 66 S.Ct. 154 (1945), federal courts have differentiated between two bases for the exercise of personal jurisdiction: specific jurisdiction and general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). Specific jurisdiction "depends on an affiliation[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal citations and quotation marks omitted). On the other hand, "A court may assert

general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (internal citations and quotation marks omitted).

## II.      The Exercise of Specific Personal Jurisdiction Over Amazon is Proper in California

Defendant Amazon is subject to the specific jurisdiction of this Court because Amazon purposefully availed the California market, Amazon's activities in California give rise and relate to Plaintiffs' claims, and justice is served by California courts adjudicating the claims against Amazon. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017) indicates the three prongs of the analysis "to determine whether a defendant has sufficient contacts to be subject to specific personal jurisdiction":

> (1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; ***or*** perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)   the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)   the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Id.* at 1142 (emphasis added). In the following analysis, Plaintiffs address these three prongs of the specific jurisdiction analysis in turn.

### A. Prong One: Amazon purposefully avails itself of the California market

*Yahoo! Inc. v. La Ligue Contre Le Racisme* instructs that the first prong of the specific jurisdiction analysis "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*).

In its recent decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, the United States Supreme Court indicated that relevant to the purposeful availment inquiry is whether a defendant corporation deliberately extended into the forum state, had clear notice of its legal exposure in the forum state, and could do something about that exposure. 141 S.Ct. 1017, 1027 (2021). Discussing *World-Wide Volkswagen*, the Court in *Ford* reasoned that a company that purposefully avails itself of a state's market could "act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are [still] too great, severing its connection with the State." *Id.*

Here, Amazon's purposeful availment in California renders it able to both predict that litigation could occur and take action to avoid negligent conduct that will foreseeably harm citizens of the state and beyond.

First, Amazon's extensive contacts with California render it predictable that litigation would result from those contacts. California presents a robust and profitable market to Amazon, and Amazon purposefully avails itself of the privileges and benefits of conducting business within the state. California garners more revenue in California than in any other state. *Goldberg Decl.* ¶ 9. Amazon has invested over $81 billion into its business operations in California since 2010, employs over 170,000 individuals in California, and maintains 296 facilities in California. *Goldberg Decl.* ¶ ¶ 4-5, 7. For comparison, Apple – ranked third on Fortune's annual ranking of the largest companies in the United States, ranked by revenue generated in 2021 – is headquartered in California and employs only 154,000 individuals. *Goldberg Decl.* ¶ 10. Amazon also maintains an extensive sales and distribution network within California. *FAC* ¶ 55. Amazon's contacts in California are both unique and extensive, and it should therefore be predictable to Amazon that it may be subject to suit there.

Amazon not only has a notably large presence in California, but it specifically includes text from California state law in its Business Solutions Agreement. The Agreement, attached as Exhibit D to Amazon's Motion to Dismiss, requires that sellers on Amazon's marketplace "expressly waive and relinquish any rights that you had or may have under Section 1542 of the Civil Code of the State of California." Dkt. 25-1 at 86. Moreover, Amazon requires that

6

California sellers indemnify Amazon from all claims from customers. *FAC* ¶ 56.  Amazon has already sought to enforce this indemnity clause against Loudwolf to cover its liability and legal fees for this very lawsuit. *Goldberg Decl.* ¶ 13.

Second, given these extensive contacts with California, Amazon could have taken action to avoid negligent conduct that would foreseeably harm citizens of the state and beyond. Specifically, Amazon could have either severed its tortious connection to California by ceasing to sell Loudwolf Sodium Nitrite on its marketplace or, even better, it could have immediately notified Loudwolf years prior to Kristine and Ethan's deaths of the dangers of the product. *See FAC* ¶ 102 ("Even though Amazon had received dozens of notices that its various brands of Sodium Nitrite were being used for suicide, dating back to at least 2018, if not earlier, Amazon did not notify Loudwolf or other Sodium Nitrite vendors its product was regularly being purchased by people –including children -- to kill themselves.").

### i.  It is Amazon's conduct, not Plaintiff's injury, which is meaningful to the specific jurisdiction analysis

Amazon's contention that harm to plaintiffs must be suffered in the forum state, *Motion to Dismiss*, at 5, does not control here. The Supreme Court has stated plainly that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Moreover, aside from *Walden's* clear rejection of the requirement that a plaintiff suffer harm within the forum state, the Supreme Court has repeatedly called into question the relevance of plaintiffs' connection to the forum to the specific jurisdiction analysis. *See, e.g. Ford*, 141 S.Ct. at 1025 (emphasizing that "the contacts must be the defendant's own choice."); *Walden*, 571 U.S. at 291 ("it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State"); *Keeton*, 465 U.S. at 779 ("we have not to date required a plaintiff to have minimum contacts with the forum State before permitting that State to assert personal jurisdiction over a nonresident defendant. On the contrary, we have upheld the assertion of jurisdiction where such contacts were entirely lacking." (internal quotation marks omitted)).

The due process inquiry turns on the defendant's connections to the forum, not those of the plaintiff. Imposing a forum-based-injury requirement makes little sense considering the primary concerns of the due process inquiry are notice and fairness to defendants. Whether a plaintiff suffers its injury in the forum state says little (and certainly nothing conclusive) about whether a defendant's own conduct provides notice that it may be subject to litigation in the forum. Whether a defendant should reasonably expect to answer suit in the forum turns on its *own* deliberate acts and contacts with the forum. *See Ford*, 141 S. Ct. at 1025.

**B. Prong Two: Amazon's California activities caused Plaintiffs' injuries**

The second prong of the specific jurisdiction analysis is clearly met here. This lawsuit arises out of and relates to Amazon's business activities within California, specifically, Amazon's fatal sales of Sodium Nitrite through Loudwolf to Kristine and Ethan. Amazon contracted to do business with Loudwolf in California, required that Loudwolf, a California corporation, indemnify Amazon from all claims from customers, and hire counsel of Amazon's choosing. *FAC* ¶ 56. Loudwolf's inventory of Sodium Nitrite was stored and shipped from California to the Plaintiffs. *Id.* ¶ 57.

Additionally, Amazon's negligent conduct and failure to warn – the central factors that give rise to this lawsuit – exist in and effect the State of California. Amazon's negligent failure to notify Loudwolf of Amazon's prior notice that Sodium Nitrite was being purchased and used for suicide occurred in California. *See id.* ¶ 102. Amazon's failure to notify Loudwolf of Nikki McCarthy's cancellation of Ethan's Sodium Nitrite order occurred in California, as did the ultimate shipment of the Sodium Nitrite to her. *Id.* ¶ 59. Amazon's recommendations and marketing of suicide kits directed vulnerable online consumers to do business in California by directing traffic to Loudwolf. *Id.* ¶ 106. Kristine's and Ethan's deaths were the direct result of Amazon's negligence and failure to warn, which allowed for the sale of Sodium Nitrite to be processed and shipped out of California and delivered to these minor children. *See Id.* ¶¶ 243, 247.

Amazon's negligence negatively affects commerce and business owners within the State of California by exposing businesses to the criminal activity by aiding and assisting others'

suicides. *See* West's Ann. Cal. Penal Code § 401. For example, Amazon removed reviews of Sodium Nitrite mentioning suicide, failed to notify Loudwolf of several complaints of suicide by Sodium Nitrite, failed to follow its own guidelines to ensure that products are labeled properly, and recommended other suicide products to customers who view Loudwolf Sodium Nitrite on Amazon's platform. *FAC* ¶¶ 101-02, 106, 122, 138.

Finally, contrary to Amazon's assertion that *Bristol-Myers Squibb Co. v. Superior Ct.* "resolves this case," *Bristol-Myers* is readily distinguishable from the instant matter. *Motion to Dismiss*, at 5. 137 S. Ct. 1773 (2017). The Supreme Court's decision denying specific jurisdiction in *Bristol-Myers* rested in large part on the fact that there was no connection between California and the specific claims at issue. *Id.* at 1780-82. Unlike the plaintiffs in *Bristol-Myers* who had no connection to Plavix that was prescribed or purchased in California, Ethan and Kristine used Amazon's marketplace to buy sodium nitrite from California. Dkt. 25-1 (hereinafter "Sachs Decl."), ¶ 5. Amazon's own contacts in California are a but-for cause of Kristine and Ethan's deaths. And while "a defendant's relationship with a… third party, standing alone, is an insufficient basis for jurisdiction," *Walden*, 134 S.Ct. at 1123, here Plaintiffs have alleged with specificity how their claims arose from Amazon's relationship with Loudwolf; namely, Kristine's and Ethan's particular purchases of sodium nitrite are traceable to Loudwolf and Amazon. *Sachs Decl.* ¶¶ 5-7. In contrast, in *Bristol-Myers*, the Court reasoned that the nonresident plaintiffs failed to show the path by which their Plavix prescriptions were distributed to them, and quoted the defendant's statement that tracking that distribution through a third party, McKesson, was impossible. 137 S.Ct. at 1783.

### C. Prong Three: The exercise of jurisdiction over Amazon comports with fair play and substantial justice—and, therefore, is reasonable

Should the Court agree that Plaintiffs have satisfied the first two prongs of the specific jurisdiction analysis, the burden shifts to Defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Morrill,* 873 F.3d at 1142 (quoting *Burger King*, 471 U.S. at 476–78).

The following factors are to be considered in determining whether the exercise of jurisdiction over a nonresident defendant is reasonable: "1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum." *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

Amazon failed to meet its burden to present a compelling case that the exercise of jurisdiction in California would not be reasonable.  Further, nearly all of these factors favor a finding of specific jurisdiction in California. First, as noted above, *supra* Part 2.A., Amazon has purposefully availed itself of California. What's more, Amazon cannot at once create a business model that profits off of having suppliers, like Loudwolf, scattered cheaply around the country with Amazon imposing a high degree of control over communications, inventory, purchasing and shipping between suppliers and end consumers, while also claiming it has not availed itself of the state where those suppliers exist.

Second, litigating in California imposes minimal burden on Amazon. Amazon has offices and legal representation based in California and are prepared to and capable of litigating in this state. Amazon's capacity to litigate here is evidenced by its swift removal of this action from State to Federal court the very same day the Alameda Court generated the docket and before Amazon was served. Nothing suggests litigation of this action in California would be inconvenient for Amazon. Yet, Defendant seems to express a willingness to litigate this case in Ohio or West Virginia where Amazon has a far weaker presence. Relative to the burden of litigating this case in either of those two states, requiring Defendants to litigate this action in California is not unreasonable.

Third, Amazon's choice-of-law argument between California and Defendant's home jurisdiction of Washington only inconveniences Defendant. Amazon is currently defending nearly identical litigation in Washington, and was denied its 12(b)(6) motion on substantive legal

issues. *See Scott v. Amazon.com, Inc.*, No. 22-2-01739-2 SEA (Wash., King Cnty., Dec. 30, 2022) (Order Denying Defendant's CR 12(b)(6) Motion to Dismiss).

Fourth, California has a strong interest in adjudicating this dispute, due to both Amazon's extensive contacts with the state and California's posture against the aiding and assisting in another's' suicide.[1]

Fifth, the exercise of personal jurisdiction by the Court aids an efficient resolution of this litigation. This dispute centers on negligence and product liability claims that arose from Loudwolf's and Amazon's conduct in California and ultimately killed citizens in other states. Given Plaintiffs' willingness to litigate this case in California, it is the most efficient forum because it is where both Loudwolf and Amazon are at home. Loudwolf, a tiny company of less than four people and limited resources, *Goldberg Decl.* ¶ 14, may very well object to suit in Washington state, leaving Plaintiffs forced to litigate separately against Loudwolf in California and Amazon in Washington State. Such a result would sacrifice judicial economy and risk inconsistent opinions.

Sixth, the exercise of personal jurisdiction by the Court aids Plaintiffs' interests in convenient and effective relief. Amazon does not and cannot argue that it would be more convenient for Plaintiffs to litigate separately in their respective home jurisdictions. Seventh, and finally, transfer to the U.S. District Court for the Western District of Washington is not demonstrably better than California, and as noted above, Amazon would arguably encounter a greater hurdle in moving to dismiss future related cases because similar litigation has already survived its 12(b)(6) motion to dismiss. *Scott*, No. 22-2-01739-2 SEA (Order Denying Defendant's CR 12(b)(6) Motion to Dismiss).

---

[1] "Neither the legislative history of the statute defining the crime of aiding, advising or encouraging a suicide nor the underlying public policy reasons for imposing criminal liability for the aiding, advising or encouraging of a suicide would require, or indeed justify, treating such crime differently than any other crime, such as homicide, assault or robbery, in which a failure to complete the crime may yet be chargeable as a criminal attempt." West's Ann. Cal. Penal Code § 401. *In re Ryan N.*, 92 Cal. App. 4th 1359, 112 Cal. Rptr. 2d 620 (2001).

Balancing these factors, the Court should conclude that the exercise of specific jurisdiction in California is reasonable.

### III.      The Exercise of General Personal Jurisdiction is Proper in California

### A.  Under *Daimler*, general jurisdiction extends to forums beyond Amazon's principal place of business and place of incorporation

The Supreme Court most recently discussed the limits of general jurisdiction in its 2014 *Daimler* decision. The Court explained that for a defendant corporation, "the place of incorporation and principal place of business are 'paradig[m]… bases for general jurisdiction.'" *Id*. at 760 (quoting Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L.Rev. 721, 728 (1988)). The U.S. District Court for the Northern District of California construes "principal place of business" to mean "'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities' – the corporation's 'nerve center.'" *Serje v. Rappi, Inc.*, 2021 No. 19-cv-07415-VC, 2021 WL 2633536, at *4 (N.D. Cal. Jun. 25, 2021) (quoting *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1186 (2010)) (internal quotation marks omitted).

Importantly, *Daimler* clarified that "*Goodyear* did not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." 134 S.Ct. at 760. The Court went on: "We do not foreclose the possibility that in an exceptional case… a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n. 19. In other words, in an exceptional case a court may exercise general jurisdiction over a corporation in a state other than its principal place of business or place of incorporation.

### B.  The Court should weigh two factors to apply the "exceptional case" theory

Courts should consider two factors in their "exceptional case" analyses: (1) "comparative contacts," or a corporation's contacts with the forum state relative to those with other forums, and (2) "absolute contacts," or the absolute extent of a corporation's contacts with a forum state.

Taken together, these two factors ensure that the exercise of general jurisdiction is limited to forums in which a defendant corporation is predictably and uniquely rendered at home.

First, the Supreme Court instructed in *Daimler* that courts applying the exceptional case theory should compare a defendant corporation's contacts with the forum state to its activities in other states and countries. In *Daimler,* the Court stated that general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." 134 S.Ct. at 762 n. 20. Rather than considering a defendant corporation's contacts with the forum state in isolation, courts must consider how its contacts with the forum state compare to those with other jurisdictions. Only then can a court assess whether the corporation is properly considered at home in the forum state, that its contacts with the forum state are "exceptional" so as to justify the exercise of general jurisdiction. Such a comparative contacts analysis also protects against the expansion of the "exceptional case" theory to more than one or two forums in any given case.

Second, the court should consider the extent of a defendant corporation's contacts with a forum state, or its "absolute contacts." The absolute contacts factor acts as a check on the first factor, the comparative contacts analysis. It ensures not only that a corporation's contacts with the forum state must be exceptional compared to those in other forums, but also that exertion of the state's coercive power over the corporation is justified due to the substantial nature of the contacts. The absolute contacts factor, in other words, enforces a limiting principal.

Due process is served by this two-factor analysis because it favors predictability. The Due Process Clause, which limits a court's exercise of personal jurisdiction over a defendant, "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen*, 444 U.S.  S.Ct. at 297. *Daimler* emphasized predictability when describing the benefits of the paradigm bases for general jurisdiction: "[t]hose affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." 134 S.Ct. at 760. *Hertz* also explained how predictability in the context of jurisdictional rules benefits both defendants and plaintiffs. 130 S.Ct. at 1193.

The comparative contacts and absolute contacts factors, considered together, will function to limit the application of the "exceptional case" theory and ensure it is applied in a predictable manner. In other words, for the "exceptional case" theory to apply, a defendant corporation's relative and absolute contacts with the forum state must be so substantial that the corporation is rendered, predictably, at home in that state.

This two-factor analysis is consistent with the Supreme Court's indication that the law should adapt to the modern economic market. *See South Dakota v. Wayfair, Inc.*, 138 S.Ct. 2080, 2097 (2018) (disregarding a rule linking taxation to a corporation's physical presence within a state in part because "[t]he Internet's prevalence and power have changed the dynamics of the national economy."). Large, national corporations with extensive contacts in multiple states "were simply much more rare in the age of *Pennoyer*, [and the general jurisdiction] doctrine should not remain static or reverse while the entities it governs evolve." D. (Douglas) E. Wagner, *Hertz So Good: Amazon, General Jurisdiction's Principal Place of Business, and Contacts Plus as the Future of the Exceptional Case*, 104 CORNELL L. REV. 1085, 1125 (2019).

### C.  The Court has general jurisdiction over Amazon.com, Inc. pursuant to the exceptional case theory

Amazon is incorporated in Delaware and maintains its official headquarters in Washington. *FAC* ¶ 49. However, the Court should apply the "comparative contacts" and "absolute contacts" factors to find that this is an exceptional case warranting the exercise of general jurisdiction over Amazon in California.

#### i.  Factor 1: A "comparative contacts" analysis supports that Amazon is "at home" in California

First, Amazon's contacts with California, relative to those with other states and countries, render it "at home" in the state. Amazon garners more revenue in California than in any other state. *Goldberg Decl.* ¶ 9. Amazon itself reports that, since 2010, it has invested more in its business operations in California than in any other state, save for its stated headquarters in Washington. *Id.* ¶ 4. Specifically, since 2010 Amazon's five greatest monetary investments by state are $129 billion in Washington, $81 billion in California, $34 billion in Virginia, $29

billion in Texas, and \$23 billion in New Jersey. *Id.* Aside from Washington, which houses

Amazon's official headquarters, Amazon's monetary investment in California is *substantial*

compared to its investments in other states, more than twice the amount invested in the third-

ranked state.

Exploring the details of Amazon's contacts in the five states in which Amazon states it

has made the greatest monetary investments, Amazon boasts that it has created over 170,000 jobs

in California, compared to 95,000 in Texas, 85,000 in Washington, 58,000 in New Jersey, and

30,000 in Virginia. *Id.* ¶ 5. Amazon acts as an online marketplace for over 220,000 business

sellers and authors based in California, compared with 112,000 in Texas, 46,000 in Washington,

45,000 in New Jersey, and 42,000 in Virginia. *Id.* ¶ 6.

Amazon also maintains more than twice as many facilities (including fulfillment,

sortation, delivery, and customer service centers; stores, including Whole Foods Market

locations; solar and wind farms; pharmacies; "On-site solar locations"; "Tech hubs"; "Air

Gateway[s]"; "Air hub[s]"; and "Hub Locker+ locations") in California than in other state. *Id.* As

of February 2022, Amazon maintained 296 such facilities in California, compared with 123 in

Texas, 81 in New Jersey, 55 plus the "Puget Sound headquarters" in Washington, and 49 plus the

"Arlington headquarters" in Virginia. *Id.* ¶ 7. And Amazon is currently constructing a 4.1

million-square-foot warehouse facility in California, which will be larger than any other Amazon

warehouse in the world. *Id.* ¶ 8.

These facts lie in stark contrast to those in cases in which courts found insufficient

comparative contacts to justify the exercise of general jurisdiction in a forum distinct from a

defendant corporation's place of incorporation or principal place of business. In *Daimler*, the

Supreme Court reasoned that the defendant corporation's sales within the forum state amounted

to only 10 percent of sales nationally or 2.4 percent of sales worldwide. 134 S.Ct. at 752, 761-62.

In *Martinez v. Aero Caribbean*, the Ninth Circuit found that the defendant's contacts within the

forum state, including significant contracts and advertising but no offices, staff, or physical

presence, were "minor compared to its other worldwide contacts." 764 F.3d 1062, 1070 (9th Cir.

2014), *cert. denied*, 135 S.Ct. 2310 (2015). And in *Garlough v. FCA US LLC*, the court reasoned

that the defendant's operations in the forum state did not include the design, manufacture, or assembly of motor vehicles and were "limited to two facilities, which, together, employ[ed] fewer than 200 people, comprising less than .32% of FCA's workforce." No. 2:20-cv-08179-JAM-AC, 2021 WL 1534205, at *3 (E.D. Cal. April 19, 2021). In contrast, Amazon's extensive contacts with California, considered in comparison to its contacts with other forums, are so exceptional that they render Amazon at home in California.

### ii.   Factor 2: The exercise of personal jurisdiction in California is justified given Amazon's substantial contacts with the state

Second, Amazon's contacts with California are so substantial, not only compared to those with other forums but also from an absolute perspective, that it should expect to be subject to liability there. To summarize the facts above, *see supra* pp. 6-7, 15. Amazon has invested over $81 billion into its business operations in California since 2010, employs over 170,000 individuals in California, operates 296 facilities in California, and maintains an extensive sales and distribution network in California. Amazon's contacts in California are both unique and extensive, and it should therefore be predictable to Amazon that it may be subject to suit there.

Importantly, these facts which make the assertion of general jurisdiction over Amazon predictable in California also indicate why such a ruling by this Court is unlikely to expand the doctrine general jurisdiction beyond the Supreme Court's intent when it noted the possibility of an "exceptional case" in *Daimler*. In that case, the Court warned, "If [defendant's] California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [defendant's] sales are sizable." 134 S.Ct. at 761. In the instant matter, however, the two-factor analysis of comparative contacts and absolute contacts belie any similar concern. Amazon's contacts with California are so extensive, and so outstrip its contacts with other forums, such that Amazon is reasonably considered "at home" in California but not in other forums.

iii.   **A narrower construction of the "exceptional case" theory also favors the exercise of general jurisdiction over Amazon.com, Inc.**

Should the Court forgo Plaintiffs' suggested 2-factor analysis in favor of a narrower interpretation of the "exceptional case" theory, it should still find the exercise of general jurisdiction proper in this matter. In *Daimler*, the Supreme Court cites its prior decision in *Perkins v. Benguet Consol. Mining Co.*, 72 S.Ct. 413 (1952), as an example of an "exceptional case" in which general jurisdiction may apply outside of a corporation's place of incorporation or personal place of business. 134 S.Ct. at 761 n. 19. The narrowest reading of *Daimler* would thus limit such "exceptional cases" to those which are factually analogous to *Perkins*.

In *Perkins*, the defendant corporation, Benguet, was incorporated in the Philippines. Due to the Japanese occupation of the Philippines during World War II, Benguet halted its operations and its president moved to Ohio, where he kept office files for the company, corresponded related to the company, drew and distributed salary checks on behalf of the company, maintained bank accounts with company funds, conducted meetings, and carried on "a continuous and systematic supervision of the" company. 72 S.Ct. at 447-48. The Supreme Court held that Ohio courts could properly exercise general jurisdiction over Benguet, because "Ohio was the corporation's principal, if temporary, place of business." *Keeton*, 465 U.S. at 779 n. 11.

In the instant matter, facts that could be revealed through limited jurisdictional discovery may be exceedingly similar to those relevant to the Court's decision in *Perkins*. Specifically, on information and belief, both Amazon's current Chief Executive Officer, Andy Jassy, and its former Chief Executive Officer during the relevant period underlying this suit and current Executive Chairman, Jeffrey Bezos, periodically live and conduct business from their homes in Los Angeles County, California. *Goldberg Decl.* ¶¶ 11-12. On information and belief, Jassy and Bezos conduct business related to and on behalf of Amazon from California: they engage in correspondence, conduct meetings, and, like the president of Benguet in *Perkins* carry on "a continuous and systematic supervision of the" company. 72 S.Ct. at 447-48. *Goldberg Decl.* ¶¶ 11-12. *Perkins* suggests that general jurisdiction is therefore properly exercised in California

because, like the president of Banguet in Ohio, Amazon's chief executives regularly and temporarily re-locate the company's "nerve center" and principal place of business to California.

Accordingly, even if the Court narrowly interprets the "exceptional case" theory to apply only to circumstances analogous to those in *Perkins*, it should still find the exercise of general jurisdiction over Amazon to be proper in this matter.

## IV.   In the Alternative, The Court Should Grant Jurisdictional Discovery or Transfer this Action to the U.S. District Court for the Western District of Washington

### A.   The Court should grant jurisdictional discovery if it finds that "a more satisfactory showing of the facts in necessary"

On a motion to dismiss, the court "has discretion to allow a plaintiff to conduct jurisdictional discovery." *eMag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006) (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir.2003)). Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts." *Id.*

First, Plaintiffs request discovery related to Amazon's contacts with third-party sellers in California like Loudwolf. For example, at issue is Amazon's ability to convey to such sellers information that a product is causing a large number of deaths, the amount of data Amazon has on purchasers of Sodium Nitrite through third-party sellers, and Amazon policies and procedures around notifying sellers of cancelled orders.  Andy Sachs' Declaration, Dkt. 25-1, introduces several relevant factual controversies that Plaintiffs ought to have the chance to rebut. However, the necessary information remains squarely within Amazon's possession. For example, Andy Sachs' Declaration alleges: "Amazon was not involved in packaging, labeling, shipping, or fulfillment of [Ethan's and Kristine's Sodium Nitrite] order[s], and the sodium nitrite did not pass through any Amazon facility. *Sachs Decl.* ¶¶ 6, 7.  It also alleges: Amazon did not have any

customer service call centers in California at the time of the cancellation request in January 2021, *id.* ¶ 16, and "[t]he Amazon teams that communicate with third-party sellers regarding product safety issues for products sold in North America are based in Seattle, Washington. *Id.* ¶ 17. This information is all central to the relevant inquiry of Amazon's relationship with Loudwolf and the contacts with the State of California.

Plaintiffs additionally request jurisdictional discovery about Amazon's substantial contacts with California and how those contacts compare to those with other states. For example, Plaintiffs seek discovery as to how Amazon's revenue and expenditures in California compare to those in other states and countries. Plaintiffs also seek discovery about the extent to which Amazon's officers and executives are conducting business from residences and offices within California.

If the Court concludes there is insufficient information to decide whether this forum has jurisdiction over Amazon, Plaintiffs request the Court grant jurisdictional discovery to allow Plaintiffs to respond comprehensively to Amazon's Motion to Dismiss.

**B.  In the alternative, the Court should transfer this action to the U.S. District Court for the Western District of Washington**

Should this Court grant Amazon's Motion to Dismiss, Plaintiffs argue in the alternative that the Court should transfer the action to the U.S. District Court for the Western District of Washington. The parties are in agreement that general jurisdiction is proper in Washington, because Amazon's official headquarters – a principal place of business and where the corporation is at home under *Daimler* – is located there. *FAC* ¶ 49. *Sachs. Decl*. ¶ 3. 134 S.Ct. at 760.

In its Motion to Dismiss, Amazon argues that the Court should sever Plaintiffs' claims and transfer them to the U.S. District Courts for the Northern District of Ohio and the Southern District of West Virginia. Amazon, however, neglects the far more efficient option which does not require severance of Plaintiffs' claims and therefore better conserves judicial resources: transfer to the U.S. District Court for the Western District of Washington.

**CONCLUSION**

Based on the arguments set forth herein, the Court should deny Defendant Amazon.com, Inc.'s Motion to Dismiss. Alternatively, the Court should grant Plaintiffs' jurisdictional discovery to resolve facts in controversy specific to this jurisdictional inquiry, or transfer this action to the U.S. District Court for the Western District of Washington.


DATED:  January 24, 2023                **C.A. GOLDBERG, PLLC**


                                  By:     */s/ Carrie Goldberg*
                                          Carrie Goldberg (pro hac vice)
                                          Hannah Meropol (Bar No. 340095)
                                          Naomi Leeds (pro hac vice)

                                          *Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned, counsel for PLAINTIFFS NICHOLAS MCCARTHY and MARTINIQUE MAYNOR, individually and NICHOLAS MCCARTHY as successor-in-interest to ETHAN MCCARTHY a deceased individual, LAURA JÓNSSON and STEINN JÓNSSON, individually, and LAURA JÓNSSON as successor-in-interest to KRISTINE JÓNSSON, a deceased individual, certifies that PLAINTIFFS' OPPOSITION TO DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS OR TRANSFER was filed with the Court and served electronically through the CM-ECF (Electronic Case Filing) system to all counsel of record and to those registered to receive a Notice of Electronic Filing for this case on this the 24th day of January, 2023.

*/s/ Carrie Goldberg*

Carrie Goldberg